YELVERTON, Judge.
This is an appeal from a judgment fixing a boundary and declaring John V. Mackie and his wife the owners of a disputed strip of land on their side of the boundary. The parties stipulated at the trial that before 1978 there had been an ancestral fence separating their contiguous estates and that this fence was the correct boundary between them. The ancestral fence was torn down in 1978. It was the location of the ancestral fence that formed the single disputed issue in the consolidated cases. This is also the sole issue on appeal.
The issue arose in two cases consolidated for trial. The instant case was a suit to fix the boundary between the contiguous lands of William A. Mosley and John V. Mackie and his wife. The second case, Mosley v. Mackie, 448 So.2d 899 (La.App. 3rd Cir.1984), in which we this day file a separate opinion, was originally brought as a posses-sory action by Mackie. The court ordered that Mackie’s possession be recognized and that the parties file a petitory action (should either choose) within 45 days. Mosley then filed a petitory action claiming ownership of the strip of land lying along the disputed boundary. To the petitory action Mackie filed a reconventional demand seeking damages for trespass. The trespass action was severed and the consolidated cases went to trial only on the boundary and petitory actions. The trial court found for Mackie in both cases, determining that Mackie was the owner of the disputed strip, and fixing the boundary where the court determined the ancestral fence had been. A judgment was signed in Mackie’s favor in the consolidated cases. Mosley appeals. We affirm.
The location of boundary is a question of fact to be determined by the trier of fact and such a determination should not be reversed on appeal in the absence of manifest error. Fontenot v. Marks, 430 So.2d 810 (La.App. 3rd Cir.1983); Williams v. Peacock, 441 So.2d 57 (La.App. 3rd Cir. 1983). The task of the trial court was simplified in the instant case because the parties stipulated that the correct boundary was where the ancestral fence had been and the only fact question the court had to determine was the location of the ancestral fence.
Mackie testified he tore down the ancestral fence in 1978 and built a new one. His property was west of the old fence line. He built the new fence six to eight inches west of the line so the new fence would be altogether on his property. Several witnesses supported his testimony. James Diamond helped put up the new fence and said it was right where the old one had been. Wilson Santos placed it as close as six inches, as did Opal Rabón, who tore down the old fence. Freddie Paul hauled dirt to the location and was acquainted with the place; he said the old and new fences were less than a foot apart. James Litton, a lifelong resident of the area, thought the distance apart was no more than six to eight inches.
Mackie’s position was also supported by a registered surveyor, R.Y. Leone, who surveyed the property in 1976 before the Mackies’ purchase, and looked at it again in 1983 on the second day of the trial of the case.
The opposing testimony of Mosley and his witnesses placed the old fence several feet from the new fence, variously estimated at from four to 12 feet, and declared that the boundary was this distance west of the new fence, rather than east of it.
The trial court fixed the location of the ancestral fence, and hence the boundary line, in the same place occupied by the present fence built by John V. Mackie, which also conformed with the East line of a survey done by R.V. Leone. A complete review of the record establishes that this finding of fact is not clearly wrong. The judgment of the trial court is, accordingly, affirmed at appellant’s costs.
AFFIRMED.