479 So.2d 1016 (1985)
Ronney L. BROUSSARD, et ux., Plaintiffs-Appellants,
v.
Danny Wayne COLEMAN, Defendant-Appellee.
No. 84-938.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1985.
Writ Denied February 7, 1986.
*1017 Dan E. Melichar, Alexandria, for plaintiffs-appellants.
Robert L. Kennedy and Thomas G. Wilson, Colfax, for defendant-appellee.
Before FORET, YELVERTON and KING, JJ.
YELVERTON, Judge.
The plaintiffs, Ronney Broussard and his wife, sued the defendant, Danny Coleman, for a declaratory judgment to determine their boundary, and for damages for a trespass. From an adverse judgment determining their eastern boundary to be a certain creek running north to south instead of another creek or drain running east to west, plaintiffs' contended boundary, and dismissing their trespass claim, the plaintiffs appeal. We affirm.
The facts are relatively simple and not in dispute. The property of both the plaintiffs and the defendant can be traced back to a common ancestor in title by the name of John Coleman. John Coleman owned a 40-acre tract of land described as the Northwest Quarter of the Southeast Quarter of Section 25, Township 7 North, Range 1 West, in Grant Parish. In 1943 Coleman sold 10 acres, more or less, to Edgar Vallery, from whom plaintiffs derive their title. In 1946 Coleman sold the remaining land to Andrew Coleman from whom defendant derives his title.
The plaintiffs' chain of title consists of three transactions. The 1943 sale from Coleman to Vallery describes the property as the land "lying North and Northwest of a certain creek that runs across said forty acre tract..." In 1957 Vallery sold this property, the description of which was a *1018 mere reference to the 1943 sale, to John L. Broussard, Jr. In 1982 the heirs of John L. Broussard, Jr. sold the land to the plaintiffs. This act of sale made reference to the 1943 deed and described the property as lying "North of the Creek."
The defendant's chain of title from John Coleman also consists of three transactions. In 1946 John Coleman sold the 40 acre section, less 10 acres, to Andrew Coleman. In 1971 Andrew Coleman sold the section to Jack Coleman less the 10 acres, more or less, as described in the 1943 sale from John Coleman to Edgar Vallery. In 1977 the defendant, Danny Coleman, acquired this property from Jack Coleman.
The instruments of sale refer to a certain creek as the boundary between the two adjacent parcels. The dispute in this case arose because there are two "creeks" that enter the property near the northeast corner. One creek comes down into the property from the north and enters it crossing the north boundary line of the section. The second "creek" enters the property from the east and merges with the other creek to flow as one across the section to the west. The triangular piece of land (approximately two acres) between the two creeks in the northeast corner of the section is the property in dispute.
The plaintiffs' declaratory judgment action contended that the creek which runs from the east is the correct boundary. The defendant, on the other hand, contends that the creek which enters the property from the north is the boundary line and that the other creek is merely a seasonal drain. The defendant pleaded alternatively that he had acquired ownership of the disputed property through acquisitive prescription of 10 or 30 years by his ancestor in title.
The trial date was May 1, 1984. At the beginning of the trial, the plaintiffs attempted to introduce into evidence the deposition of Edgar Vallery. The defendant objected, and the trial court refused to permit the introduction of the deposition, and also denied the plaintiffs' request to have the record left open or grant a continuance for the taking of Mr. Vallery's testimony. The trial proceeded and, after considering the various deeds and the testimony of the witnesses, the trial judge determined that the creek running from the north to the south and thence westerly was the one referred to in the sale instruments, and that the disputed tract belonged to the defendant.
On appeal the plaintiffs raise two issues: 1) Whether the trial court erred in finding the deposition inadmissible, and in the alternative whether the trial court erred in refusing to continue the trial or leave the record open for the availability of that witness, and 2) whether the trial court erred in determining the boundary to be the creek running north to south and thence westerly.
Regarding the first issue, the appellant argues that the deposition of Mr. Vallery should have been admitted into evidence, because the notice for the deposition indicated it was being taken for all purposes, and because Mr. Vallery was too ill to testify in open court.
The evidence as to this issue reveals that the deposition was taken for the purpose of discovery. The parties did not stipulate that the deposition could be used at the trial in lieu of the witness's testimony. It is true that La.-C.C.P. art. 1450 permits the use of a deposition if a witness is not able to attend trial because of illness. However, the plaintiffs offered no evidence to establish as a fact that Mr. Vallery was too ill to testify. The attorney's unsworn statement to the court that he believed Vallery was ill was not evidence. The notice of taking Mr. Vallery's deposition was filed on March 20, 1984, by the plaintiffs. On that same date the attorneys for both parties signed and filed in the record a pretrial order. The plaintiffs did not list Mr. Vallery's name as a potential witness on this order. Plaintiffs also did not subpoena the witness to testify. Plaintiffs' counsel told the court that Mr. Vallery could not have attended anyway since he could not drive. Based on these events it is apparent that plaintiffs never planned to call Vallery as a witness. Under these *1019 facts we find the trial court did not err in finding that the plaintiffs failed to establish a basis for the introduction of Mr. Vallery's deposition. See Kleas v. Mayfield, 404 So.2d 500 (La.App. 3rd Cir.1981); Bland v. Interstate Fire and Casualty Co., 311 So.2d 480 (La.App. 4th Cir.1975); and Succession of Martin, 424 So.2d 1219 (La.App. 1st Cir.1982).
The decision to hold open a case for the production of additional evidence rests within the sound discretion of the trial judge and will not be disturbed on appeal unless manifestly erroneous. Cutright v. Wilson, 410 So.2d 1274 (La.App. 3rd Cir.1982). Because plaintiffs failed to offer evidence of the witness's illness and failed to subpoena the witness, we find no manifest error in the trial court's failure to hold open this case for the introduction of Mr. Vallery's testimony.
The trial court also has wide latitude in acting on a motion for continuance and this ruling will not be disturbed absent a clear showing of an abuse of discretion. Clay v. Clay, 467 So.2d 166 (La.App. 3rd Cir.1985). We find no abuse of discretion in the refusal of a continuance in this case.
The location of a boundary is a question of fact to be determined by the trier of fact and such a determination should not be reversed on appeal in the absence of manifest error. Mosley v. Mackie, 448 So.2d 897 (La.App. 3rd Cir. 1984) and Williams v. Peacock, 441 So.2d 57 (La.App. 3rd Cir.1983).
As to this, which is the second issue raised on this appeal, the trial court in its reasons for judgment stated as follows:
"This Court finds that the evidence produced at trial clearly establishes the fact that the creek running from the north, `the running creek', separates the two tracts of land. The evidence also clearly establishes the fact that the southern most streamlet is actually a seasonal drain, but not a creek.
"Several disinterested witnesses were heard to testify at trial. These witnesses were local residents who had resided in this area for most of their lives. These witnesses established that they were very familiar with this land, having visited this land on many occasions over the years. These witnesses testified that they had always considered the running creek to be the boundary between the Broussard and Coleman tracts, never having doubts as to this fact.
"The testimony of these witnesses also shows that the running creek has always been treated by these parties as the boundary and was respected as such by the community. Consider the testimony of Dell Durand. He testified that back in the 1950's he frequently cut logs on the Coleman property, pursuant to a contract that he had with Andrew Coleman. He recalls that he would cut logs all the way up to the running creek. This he said was the boundary of the Coleman property [sic]. This evidence is highly probative in establishing the `running creek' to be the true boundary. But assuming for the sake of argument that the running creek was not the true boundary, then every time Mr. Durand cut logs he would have been encroacing [sic] on the Broussard property. And if this were the case, one would have expected the Broussards to have complained about this trespass. However, there is a conspicuous absence of any evidence of such a complaint in the record.
"Consider next the testimony of Mr. Clyde Todd, of United States Forestry Service. He testified that the southern most creek is not a creek at all, but merely a seasonal drain. When asked to define a seasonal drain, he replied, `A seasonal drain is something which does not carry water all year round'. From this, this Court concludes that inasmuch as the southern most streamlet is not a creek, then the northern most streamlet must necessarily be the creek referred to in both deeds."
Considering also the testimony of Mr. Carl Slaughter, another forester who testified in the case, we cannot say that the *1020 trial court was clearly wrong in finding the creek running from the north to the south and thence westerly to be the boundary. Mr. Slaughter testified that he cut timber for Mr. Vallery during 1952 or 1953. He stated that there was only one running water creek on the property and that was the creek running from the north. He stated that Mr. Edward Vallery, brother of Edgar, advised him to cut timber up to the creek running from the north and not to cut timber across the creek into the disputed area since the north creek was the boundary. He stated that Mr. Edgar Vallery was present during this conversation.
The plaintiffs' witnesses, mainly consisting of relatives, disputed the fact that the creek running east to west dried up seasonally, and disputed that it was the smaller creek. They offered little evidence to show that that creek was the true boundary.
We find no manifest error in the trial court's location of the boundary.
For these reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.