538 So.2d 1147 (1989)
BRICKS UNLIMITED, INC.
v.
William STEPTER.
No. 88-CA-1143.
Court of Appeal of Louisiana, Fourth Circuit.
February 16, 1989.
Rehearing Denied March 15, 1989.
*1148 Henry F. Mestayer, Satterlee, Mestayer & Freeman, New Orleans, for plaintiff/appellee.
Wayne E. Garrett, Charbonnet & Charbonnet, New Orleans, for defendant/appellant.
Before BYRNES, LOBRANO and WARD, JJ.
LOBRANO, Judge.
This appeal is the result of a suit brought by Bricks Unlimited, Inc. (Bricks) against William Stepter to recover the balance owed for repairs to Stepter's trucks, for a loan advanced to Stepter which was never repaid and for bricks purchased by Stepter for which he never paid.
The case was referred to a commissioner. On October 23, 1987, following the hearing, the commissioner recommended judgment in favor of Bricks. The trial judge adopted the findings of the commissioner and on November 16, 1987 rendered judgment in favor of Bricks in the amount of $7,333.34. This amount represents $8,520.58 owed by Stepter minus a $1,187.24 credit owed by Bricks.
From this judgment Stepter appeals asserting the following assignments of error:
(1) The trial court erred by refusing to grant a continuance on the day of trial;
(2) The trial court erred by refusing to keep the case open to allow Stepter to testify when the issue before the court was one of credibility;
(3) The trial court erred in finding that Bricks had in fact received authorization from Stepter for major repairs to the trucks;
(4) The trial court erred in awarding Bricks sums for unauthorized repairs in excess of its authority;
(5) The trial court erred in awarding $1,100.00 to Bricks as proceeds for a loan advanced to Stepter and for the unpaid amount for bricks sold to Stepter.
ASSIGNMENTS OF ERROR 1 AND 2:
Stepter asserts the case should have been continued the day of trial or held open to allow him an opportunity to testify.
[1] Code of Civil Procedure Article 1601 provides:
"A continuance may be granted in any case if there is a good ground therefor."
Several factors are to be considered by a trial judge before granting a continuance. These factors include diligence, good faith and reasonable grounds. Katz v. Melancon, 467 So.2d 1284 (La.App. 4th Cir.1985). Applying these factors to the record before us we find no error in the trial court's ruling.
The record reflects the following:
A pretrial conference was scheduled for March 6, 1987. At Stepter's request this conference was continued to March 27, 1987. The case was then set for trial on June 2, 1987. Stepter then requested a continuance for personal reasons. Bricks did not object and the matter was rescheduled to October 22, 1987. On October 14, 1987, Stepter requested another continuance in order to be in San Francisco on October 23, 1987 to accompany his son to a coroner's inquest into the death of another son. No evidence was presented to prove such a hearing was in fact scheduled or that Stepter was subpoenaed to appear. His appearance was voluntary. No reasons were given as to why Stepter could not testify in the instant case and still *1149 arrive in San Francisco for the inquest the following day. The motion for continuance was denied. Stepter did not appear on the day of trial apparently choosing to go to San Francisco instead.
Considering the facts of the instant case, the previous continuances of the pre-trial and trial dates, and the lack of any showing that he was unable to appear for trial, we find no abuse of discretion on the part of the trial judge in denying the continuance.
Likewise, we find no manifest error in the trial court's refusal to hold the case open or re-open the case for the taking of Stepter's testimony.
Our Code of Civil Procedure and the jurisprudence interpreting it clearly indicates that there is a reluctance to interfere with the trial judge's determination as to whether a case should or should not be held open for the taking of additional testimony or evidence. See, C.C.P. Art. 1631 and 1632; Broussard v. Coleman, 479 So.2d 1016 (La. App. 3rd Cir.1985), writ denied, 481 So.2d 1354; Cutright v. Wilson, 410 So.2d 1274 (La.App. 3rd Cir.1982); Harrison v. South Central Bell Telephone Company, 390 So. 2d 219 (La.App. 3rd Cir.1980), writ den. 396 So.2d 900; Yeutter v. Lewis, 334 So.2d 728 (La.App. 3rd Cir.1976). The decision to hold a case open for the production of additional evidence rests within the sound discretion of the trial judge and only where such rulings are manifestly erroneous will the reviewing court interfere. See, Broussard v. Coleman, supra; Cutright v. Wilson, supra; Harrison v. South Central Bell Telephone Company, supra.
We find no manifest error in the instant case. The record reflects that Stepter knew months in advance when the case was set for trial. The record also indicates that, in addition to his own testimony, Stepter planned to call as witnesses the mechanic who performed the repairs in question, and Mr. Sal Grazanio, his bookkeeper. He also planned to introduce documentation in support of his defense. Only the mechanic testified. There was no other evidence submitted on Stepter's behalf. The record does not convince us that there was additional evidence, crucial to the case, that was not available on the trial date. There was no necessity to hold the case open. See, Harrison v. South Central Bell Telephone Company, supra.
ASSIGNMENTS OF ERROR 3, 4 AND 5:
The issue raised by these assignments is a factual one. Stepter asserts that the findings of the trial court are not supported by the evidence. We disagree.
For approximately 20 years, Stepter, an independent contractor, and Bricks had a long standing business relationship wherein Stepter delivered materials (bricks, mortar, etc.) sold by Bricks. In exchange for the availability of Stepter's trucks, Bricks agreed to oversee the upkeep and maintenance of the trucks and deduct these costs from the monies earned by Stepter for drayage services. Stepter was provided with a weekly accounting. He was responsible for his payroll. He was also responsible for providing all equipment needed to make the deliveries.
As time passed, Stepter relinquished more and more of the custody and control of his operations to Bricks. Bricks kept Stepter's payroll. Stepter's trucks were stored in Bricks' yard. Bricks was given verbal authorization to purchase tires, fuel, batteries and other such items and to perform all minor repairs. Major repairs were to be made with Stepter's approval. All records were kept by Bricks showing the debts incurred in overseeing Stepter's operations and the monies earned by Stepter for drayage services. Bricks paid Stepter's employees, and made the appropriate withholding deductions. A check for the net amount due Stepter was made each week and held by Bricks. Stepter would come by to pick up the check every four to five weeks.
Although Bricks exercised an excessive amount of control and domination over Stepter's operations, there was no evidence presented that Stepter ever objected to such control. In fact, the evidence is overwhelming that Stepter relinquished control of his operations to Bricks to such an extent that by the time the relationship was *1150 terminated, Bricks was, for all intents and purposes, in complete control of Stepter's company. Brick performed all of the operational and administrative duties for Stepter while Stepter received 100% of the profit.
Our Civil Code provides:
"A mandate, procuration or letter of attorney is an act by which one person gives power to another to transact for him and in his name, one or several affairs." La.C.C. Art. 2985

"The mandate may take place in five different manners: For the interest of the person granting it alone; for the joint interest of both parties; for the interest of a third person; for the interest of such third person and that of the party granting it, and, finally, for the interest of the mandatary and a third person." La.C.C. Art. 2986 (emphasis added)
"A power of attorney may be given, either by a public act or by a writing under private signature, even by letter. It may also be given verbally, but of this testimonial proof is admitted only conformably to the title: Of Conventional Obligations."[1]La.C.C. Art. 2992 (emphasis added)
"Powers granted to persons, who exercise a profession, or fulfill certain functions, or doing any business in the ordinary course of affairs to which they are devoted, need not be specified, but are inferred from the functions which these mandataries exercise." La.C.C. Art. 3000.

"The principal ought to reimburse the expenses and charges which the agent has incurred in the execution of the mandate, and pay his commission where one has been stipulated.
If there is no fault imputable to the agent, the principal can not dispense with this reimbursement and payment, even if the affair has not succeeded; nor can he reduce the amount of reimbursement, under pretense that the charges and expenses ought to have been less." La. C.C. Art. 3022.

The question of agency is a factual determination. Automotive Finance Co. v. Kesk, Inc., 200 So.2d 136 (La.App. 4th Cir. 1967).
In his reasons for judgment the trial court stated:
... "Plaintiff had over the years advanced sums by direct payment of invoices for repairs and fuel to defendant's trucks, and deducted such amounts from the amount earned by the defendant for delivering bricks. In addition loans were made and bricks sold to the defendant. This case involves the cumulation of such items.
Lawrence Adams, Jr., [Secretary-Treasurer and owner of Bricks] testified and identified various invoices and checks in payment. There is no doubt that such items were made for the benefit of the defendant and used in his trucks. Full accounting was made by the plaintiff to the defendant for all transactions and earnings. Plaintiff in addition showed further credits due to defendant in the amount of $1,187.24. On cross examination Mr. Adams stated that the defendant verbally approved the larger repair bills incurred and paid by the plaintiff.
The relationship which developed and was maintained for so many years between these parties was severed by the defendant when he failed to attend to further deliveries. While there seems to have been an overly intrusive control and domination exercised by the plaintiff over the trucks and personnel of the defendant, a supposedly independent operator, the defendant allowed this system to operate and the Court is convinced the *1151 amounts determined below are due by the defendant."
Stepter contracted with Bricks to perform drayage services. In order to fulfill this contract, Stepter's equipment had to be maintained. The evidence is overwhelming that Stepter, not only voluntarily relinquished custody and control of his daily operations to Bricks, but knew that the repairs were being made. The testimony of Lawrence Adams supports the conclusion that Stepter authorized and ratified the major repairs. Frederick G. Madden, the shipping manager and yard supervisor for Bricks when asked if Stepter ever complained about the repairs not being authorized, testified as follows:
Q. Did Mr. Stepter ever complain to you that the charges were not authorized or he was not being properly charged or anything like that?
A. He would complain they were excessive a lot of times. You know, it was building up, and, "Gee whiz, what's happening to the trucks," and everything, but not that they weren't authorized because he knew repairs had to be made, and they were constantly breaking down. They were always breaking down.
Q. Do you know if he was saying, "I wish they hadn't taken out that much this week"?
A. No. In a general sense, he was talking, "Every time I turn around, something is breaking," that kind of thing. He never came on real strong with me about any kind of complaint.
Q. Was he questioning the integrity of Bricks Unlimited in making deductions, anything of that nature?
A. I never got that impression from him, never, sir.
No evidence was presented to the contrary.
Thus, we find no manifest error in the trial court's conclusion that Stepter authorized Bricks, either directly or by ratification, to perform whatever repairs were necessary to keep the trucks operable.
Lawrence Adams, Jr. testified that $1,100.00 was advanced to Stepter as a loan against future earnings. The cancelled check dated March 18, 1986 was introduced into evidence and noted "advance on future drayage". Adams also testified that materials consisting of bricks and mortar totalling $759.38 were sold to Stepter and delivered to his property on Third Street. The dray ticket evidencing this sale was introduced into evidence. No evidence was introduced by Stepter to refute these claims. Thus, we find no manifest error in the trial court's finding that Stepter owed these amounts to Bricks.
These assignments of error are without merit.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal to be paid by appellant.
AFFIRMED.
NOTES
[1] See Chapter 5 "Proof of Obligations" of Title III. C.C. Art. 1846 provides:

"When a writing is not required by law, a contract not reduced to writing, for a price or, in the absence of a price, for a value not in excess of five hundred dollars may be proved by competent evidence.
If the price or value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances." (emphasis added) See also; Savoie v. Estate of Rogers, 410 So.2d 683 (La. 1981).