639 So.2d 489 (1994)
Lloyd GILCHRIST, Sr.
v.
OZONE SPRING WATER COMPANY.
No. 93-CA-2515.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1994.
Rehearing Denied July 19, 1994.
*491 Robert A. Caplan, Lewis & Caplan, New Orleans, for plaintiff/appellant.
T. Howard Leach, III, Metairie, for defendant/appellant.
Before KLEES, JONES and WALTZER, JJ.
WALTZER, Judge.

STATEMENT OF THE CASE
Lloyd Gilchrist, Sr. (Gilchrist) sued Ozone Spring Water Company (Ozone) for injuries allegedly arising out of a slip and fall injury Gilchrist sustained when he fell on the bottom three to five steps of a staircase located on Ozone's premises. Access to the stairwell was controlled by a combination-controlled locking mechanism on a steel door, the combination of which was available to Ozone employees. Gilchrist claimed his injuries were caused solely by the defective design[1] and/or condition of the steps, or by the presence of a slippery substance thereon. Gilchrist contended that Ozone failed properly to inspect and maintain the stairwell, and failed to warn plaintiff of the alleged defects.
Ozone answered, denying Gilchrist's claims, pleading comparative fault and contending that Gilchrist's injury occurred while he was on Ozone's premises without proper authorization in a limited access area.
Trial was held before the district court judge on 14-16 June 1994. At the close of Gilchrist's testimony, the court noted that the record of Gilchrist's medical condition prior to the alleged accident was incomplete, and held the case open for reception of evidence including hospital records of two prior surgeries and a 1980 back strain, records of three treating physicians, and Social Security records pertaining to Gilchrist's pre-existing disability arising from accidents occurring seventeen and ten years ago. Plaintiff moved to limit production of these documents, and from the trial court's denial of that motion, plaintiff filed a notice of intention to apply to this court for supervisory writs. The trial judge ordered that the application for writs be filed in this court on or before 23 July 1993. There is no record of Gilchrist's having applied to this Court for supervisory writs.[2]
The case was argued to the trial court on 10 September 1993, and judgment was rendered on 13 September 1993 in favor of Gilchrist in the amount of $193,703.40, together with legal interest from judicial demand until paid. The trial court set Gilchrist's comparative fault at 40% and Ozone's fault at 60%. The trial judge awarded $118,339.00 for past medical expenses, $29,500.00 for future medical expenses and $175,000 for *492 general damages, reduced by 40% to reflect Gilchrist's comparative fault.
On 14 September 1993, plaintiff was granted a devolutive appeal, and on 8 October 1993, defendant was granted a suspensive appeal.[3]
Finding no manifest error in the trial court's judgment, we affirm.

TRIAL COURT'S REASONS FOR JUDGMENT
The trial judge found that on the day of the accident, Gilchrist accompanied his son, Lloyd Gilchrist, Jr. (Junior), to the Ozone plant. The judge did not resolve the issue of whether Junior, a former Ozone employee who had been terminated for cause six days before the alleged accident, and Gilchrist were on the premises for any legitimate purpose, but found that Junior used his employee 4-digit combination code to gain entry for himself and for his father to the stairwell wherein Gilchrist was injured. Gilchrist and Junior went up the employee stairs to Joseph Pierce's office. Following some heated discussion, they descended the stairs. When Gilchrist was approximately three to five steps from the bottom, he fell, suffering an injury.
The trial judge, relying on the testimony of Gilchrist's architect Lawrence Dwyer, found that the stairs were defective because of numerous code violations:
1. The steel was not slip resistant; there was no granular material to prevent skids.
2. The risers varied in height.
3. The stair had an insufficient number of landings.
4. The stairway violated the requirement of 17 risers between landings.
5. There was a hazardous 45 degree angle in the stairs.
6. The tread depth was insufficient.
There were no eyewitnesses to the alleged accident except for Gilchrist and his son. The trial judge found there was sufficient testimony that Ozone required all visitors to enter its industrial plant from the front office, where visitors were met by a receptionist who would "buzz in" visitors through a locked door. This conclusion is supported by the testimony of plaintiff's witness, Natale Joseph Benenate, line supervisor in production for Ozone at the time of Gilchrist's accident.[4] William H. Harris, III, Ozone's President, testified that the combination door lock was engaged at the time of the accident, and that the door could be opened only by employees who had the combination code. On the day of the accident, Junior and his father avoided the proper front entrance. Junior used his employee access code to gain entry with Gilchrist through the rear plant entrance. This was not proper access for either of them as visitors to the plant. This conclusion by the trial judge is consistent with the testimony of Junior, Harris and Gilchrist.
The trial court considered the utility of the employee stairwell, and found that Ozone had a lesser standard with respect to verbal and written warnings concerning the employee stairs than its standard with respect to the publicly accessed front stairway. The judge found the employee stairs to be utility stairs at an industrial plant where clearly the intent was to shut the stairs off and make them inaccessible to the general public. This intent was demonstrated by the presence of a coded lock on the door.
Walter VanMatre was Ozone's plant manager at the time of the alleged accident.[5] VanMatre testified that Junior had been terminated by Ozone prior to the alleged accident. The court found that since neither Gilchrist nor Junior were Ozone employees at the time of the alleged accident, they should not have been using the employee stairway at that time, and assigned 40% comparative fault to the plaintiff. This assignment *493 of fault is further supported by the testimony that Gilchrist walked with a cane, was disabled, and had a medical history of obesity, weighing nearly 100 pounds above his medically indicated weight, which factors would lead Gilchrist, if acting reasonably, to avoid the steep, narrow, circular steel stairs that he had just managed to climb successfully. The nature of the stairway was well known to Gilchrist at the time he left Pierce's office and chose to descend the employee utility stairs.
The evidence of record demonstrates that prior to the accident, Gilchrist was 100% disabled, could sit only about one hour without pain, could walk only one or two blocks without back pain, used a cane at all times, was in bed 22 hours a day, experienced shortness of breath, was nervous and had trouble concentrating.
The court awarded documented past medical expenses of $118,339; future medical expenses of $29,500; and general damages arising out of his carpal tunnel and disc surgeries of $175,000.
We find that the record amply supports the trial court's findings. In reviewing the factual findings of a trial court, an appellate court is limited to a determination of manifest error. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978).
"When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973).

PLAINTIFF'S FIRST ASSIGNMENT OF ERROR
Plaintiff contends that the trial judge erred by purportedly imputing Junior's fault to Gilchrist. Plaintiff urges that the trial court's reference to Junior's presence on the employee staircase supports this contention. We disagree.
Neither Junior nor his father were Ozone employees at the time of the accident. Junior had been terminated for cause six days earlier.[6] There is no evidence that plaintiff was an Ozone employee at any time. Thus, Ozone would expect neither Junior nor the plaintiff to be using the employee staircase on the day of plaintiff's injury. The trial judge properly considered the plaintiff's own duty of care with respect to his actions and found him to be responsible in the degree of 40% for his eventual injuries. We find the record supports this conclusion, independent of any negligence on Junior's part.[7]
The plaintiff was a person of the age of discretion, and there is no evidence that he was mentally or physically dependent on his son. Plaintiff chose to follow his son up the employee stairway. Following the son's discussion with Mr. Pierce, plaintiff again voluntarily chose to retrace his steps down the *494 steep, steel circular stairway. Certainly, plaintiff was aware of his own physical limitations, as well as the condition of the stairway and the trial court properly found him responsible for his own imprudence and want of care in choosing to attempt the stairway once more.
The trial judge's conclusions of fact are consistent with a proper consideration of "both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed." Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 974 (La.1985), citing the Uniform Comparative Fault Act, 2(b). The trial court's judgment is consistent with the proper assessment of the nature of the conduct of the parties, and of the proper factors that may influence the degree of fault assigned, including:
"(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought." Id.

We therefore find this assignment of error to be without merit.

PLAINTIFF'S SECOND ASSIGNMENT OF ERROR
Gilchrist contends the trial court erred in holding the case open for submission of Gilchrist's medical records and Social Security Administration records. Gilchrist contends these records are inadmissible hearsay evidence and may not be received after the close of the trial.[8]
The trial court has broad discretion in the conduct of the trial proceeding. LSA-C.C.P. art. 1632 provides for the normal order of trial, and adds:
"This order may be varied by the court when circumstances so justify."
LSA-C.C.P. art. 1631 provides:
"The court has the power ... to control the proceedings at the trial, so that justice is done."
It is jurisprudence constante in Louisiana that the trial court may exercise its sound discretion to allow evidence after both parties have closed their cases. See, Comment to LSA-C.C.P. art. 1632.
In Hall v. Hall, 588 So.2d 172, 174 (La. App. 5th Cir.1991), writ denied 590 So.2d 596 (La.1992), the court reviewed the application of the manifest error standard in such cases:
"Our jurisprudence explains that La.C.C.P. art. 1632 gives the trial judge the authority to deviate from the normal order of proceedings, when justice so requires. This authority includes the power of the judge to keep open or reopen the proceedings for the reception of additional testimony or documentary evidence. The reopening of a case is within the discretion of the trial court and will not be interfered with by the reviewing court absent manifest error. Bricks Unlimited, Inc. v. Stepter, 538 So.2d 1147 (La.App. 4th Cir.1989); Broussard v. Coleman, 479 So.2d 1016 (La.App. 3d Cir.1985), writ denied, 481 So.2d 1354 (La.1986)."
See also, Ware v. Medical Protective Insurance Co., 621 So.2d 54, 57 (La.App. 2d Cir.1993), writ denied 629 So.2d 354 (La. 1993); Riser v. American Medical International, Inc., 620 So.2d 372, 381 (La.App. 5th Cir.1993); and Curry v. Johnson, 590 So.2d 1213, 1217 (La.App. 1st Cir.1991).
At the close of testimony, in open court, the trial judge told counsel for the parties:
THE COURT:
"The record is not complete and this is what I need to supplement this record. I need the entire hospital records from the 1971 surgery, apparently at Methodist *495 Hospital; the hospital records from the 1978 or '79 surgery, whatever hospital; I need Dr. McLachlan's reports and notes; I need the records from Lafayette General Hospital with reference to this back strain in the 1980's; I need the complete records from Social Security; I need Dr. Provenza's reports and notes; I need Dr. Bourgeois' notes and reports. My preference would be to get all of these records over the summer and continue this hearing to September. It's not clear to me, why did Dr. Louis Provenza not testify is person, he's not available?" (Emphasis added.)
[PLAINTIFF'S COUNSEL]:
"Judge, I thought it was convenient for the Court, he's extremely expensive to get to court and hard to get to court, and in a judge trial"
THE COURT:
"The deposition isn't sufficient. Let me do this, let me look at his reports and records and all of these other medical records. There are questions I need answered in terms of his prior medical history and his percentage of disability prior to this accident so I can come to some kind of conclusion about what percentage of his disability relates to this injury, it's just not there."
Clearly, the trial judge's ruling was based on a reasonable belief that this additional information was necessary in the interest of justice. We find no manifest error in the judge's decision to keep the matter open for further evidence.
While the trial judge made clear there would be no new witnesses at the September hearing, and told counsel she assumed that hearing would be for the purposes of argument only, she took no action to foreclose either party from calling witnesses who had testified previously or whose records were submitted.
The record shows that the documentary evidence requested by the trial judge was provided to the Court and to plaintiff's counsel at defendant's cost. On 16 August 1993, plaintiff's counsel provided the court and defendant with a letter dated 30 July 1993 from Dr. John E. McLachlan concerning Gilchrist's prior condition.
On 10 September 1993, the record shows a hearing was held before the trial judge. There was argument between counsel, followed by the trial judge's ruling and reasons for judgment. Following the ruling, the record shows plaintiff's counsel asked only one question: "Judge, you're assigning 60 percent to the defendant; is that right?" Counsel did not call or attempt to call any witness to clarify, explain or impeach the records that had been submitted to the Court.
The medical reports and records sought by the trial court, and provided by both defendant and plaintiff, are relevant both to the issue of causation and to the credibility of the trial testimony of Gilchrist and his wife.
As to causation, the Louisiana Supreme Court held:
"[a] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition." Dabog v. Deris, 625 So.2d 492, 494 (La.1993), quoting Houseley v. Cerise, 579 So.2d 973, 980 (La.1991) and Lucas v. Insurance Company of North America, 342 So.2d 591, 596 (La.1977).
Thus, Gilchrist's pre-accident condition is at issue in this case.
Furthermore, the trial court's requested evidence is relevant to the credibility of Gilchrist's own trial testimony and to that of his wife. At trial, Gilchrist said his prior injuries and surgeries had not altered his ability to function well in his daily life, and that he could do "everything a normal person could do" except, perhaps, "playing football or basketball." He alleged that after the injury in the Ozone plant, his mental, physical and emotional condition so deteriorated that he was required to spend 23 hours of each day in his bed. His statements as reflected in the medical and social security records are admissible as inconsistencies, *496 contradictions and explanations of his trial testimony. LSA-C.E. art. 803(3) provides:
"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(3) ... A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition ..., offered to prove the declarant's then existing condition or his future action."
In his final decision, issued 27 April 1983 (five years before the Ozone accident), Administrative Law Judge Carl W. Sarett reports:
"Claimant [Lloyd Gilchrist, Sr.] testified that he has constant burning in the left leg. He has severe, constant low back pain which is like a `knuckle pushing hard into his back.' The back pain has gotten worse since the 1978 operation. In addition, his neck hurts all the time. Claimant stated after sitting one hour the pain is worse. He can walk one or two blocks ... then the back pain is worse and his heart beats fast. He uses a cane at all times. He has shortness of breath and chest pains three or four times a week. He stated he was in bed twenty-two hours a day. He is very nervous and has trouble concentrating. When he sits it feels as if the bones are going into each other." (Emphasis added.)
These findings are clearly within the "statement of physical condition" exception to the hearsay rule and were properly considered by the trial judge.
At trial, Gilchrist's wife testified at length about her husband's condition before and after the Ozone plant accident. It was her testimony that after Gilchrist's 1971 surgery, but before the Ozone plant accident, he had some pain at times, but led an active life, mowing grass, doing housework, shopping, cooking, and caring for her epilepsy and esophagitis. The trial judge reviewed the following statement from Judge Sarett's decision:
"Claimant's wife [Mrs. Gilchrist, Sr.] testified that claimant is constantly complaining of pain. He hardly gets out of bed. In the last year he has been worse. He cannot concentrate as he used to. He is unable to bend or walk more than one block without his leg giving out." (Emphasis added).
These findings are likewise within the foregoing exception to the hearsay rule.
Medical records maintained by a physician in his regular course of business as a provider of medical services are likewise admissible under the "business records" exception to the hearsay rule. Cole v. Celotex Corp., 599 So.2d 1058, 1082-1083 (La.1992).
The Social Security Administration proceedings, which concluded with a finding of total disability on 27 April 1983, are admissible under the public records and reports exception to the hearsay rule. LSA-C.E. 803(8) provides:
"The following are not excluded by the hearsay rule, even though the declarant is available as a witness: ...
(8)(a) Records, reports, statements, or data compilations, in any form, of a public office or agency setting forth: ...
(iii) Factual findings resulting from an investigation made pursuant to authority granted by law. Factual findings are conclusions of fact reached by a governmental agency and may be based upon information furnished to it by persons other than agents and employees of that agency."
On 27 April 1983, Administrative Law Judge Carl W. Sarett found as to Gilchrist:
"Claimant [Lloyd Gilchrist, Sr.] has a history of surgery of the back, including a fusion from L4 to S1 which was not successful. Claimant continues to have severe impairment in the lower lumbar spine including chronic arachnoiditis, spondylolisthesis and stenosis. Claimant also has some impairment of the cervical spine, possibly a herniated disc, of a moderately severe nature. He suffers from hypertension, not severe and without organ damage.... As a result of the foregoing claimant continues to suffer with severe pain and severe limitation of normal bodily functions.... Claimant continues to be incapable of performing any sustained substantial gainful activity.... Since April 1982 claimant has been disabled within the *497 meaning of the law.... claimant ... continues to be disabled and entitled to disability insurance benefits. Claimant also is disabled for purposes of supplemental security income...."
The trial judge considered both the contemporaneous trial testimony of the plaintiff, his wife, and physicians, and the records of the Social Security Administration and treating and examining physicians in making her determination of the actual loss sustained by Gilchrist as a result of the Ozone plant accident. We find no error in this consideration, nor do we find the trial court's conclusions to be manifestly erroneous. The plaintiff's second assignment of error is without merit.

PLAINTIFF'S THIRD ASSIGNMENT OF ERROR
Plaintiff contends the trial court's award is deficient in the following respects:
[1] the general damage award comprises only past damages and is inadequate;
[2] the award of future medical costs is insufficient;
[3] there is no specific award of damages for the value of past attendant care services gratuitously rendered to plaintiff by family members.
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from earlier jurisprudence, through Reck v. Stevens, 373 So.2d 498, 501 (La.1979) to the recent pronouncement of the Louisiana Supreme Court in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-1261 (La.1993), certiorari denied ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994) is that the discretion vested in the trier of fact is "very great," according to Reck, and "even vast," as stated in Youn, so that an appellate court should rarely disturb an award of general damages. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
The awards made by the trial court herein are not obviously the result of passion or prejudice, and they bear a reasonable relationship to the elements of the proved damages. While another rational trier of fact could have decided that a lower award or a higher award would be more appropriate, we cannot conclude from the entirety of the evidence viewed in the light most favorable to the prevailing party in the trial court, that a rational trier of fact could not have fixed the awards of general damages at the level set by the trial judge or that this is one of those "exceptional cases where such awards are so gross as to be contrary to right reason." Bartholomew v. CNG Producing Co., 832 F.2d 326 (5th Cir.1987); Youn v. Maritime Overseas Corp., supra.
The standard of review for damage awards requires a showing that the trier of fact abused the great discretion accorded in awarding damages. In effect, the award must be so high or so low in proportion to the injury that it "shocks the conscience." Moore v. Healthcare Elmwood, Inc., 582 So.2d 871, 879 (La.App. 5th Cir.1991).
In the case at bar, the trial judge said in her reasons for judgment that it was her intent to make the plaintiff wholethat is, to compensate him as nearly as possible in a monetary way for the difference between his condition just prior to the Ozone accident and his condition following the accident. She determined that an award of general damages in the amount of $175,000 would compensate Gilchrist for that loss. The trial judge found that prior to the accident, Gilchrist was totally disabled, in constant pain, spending about 22 hours per day in bed, walking breathlessly with a cane. We cannot say that the trial judge was manifestly erroneous in failing to attribute all of the plaintiff's present ills to the Ozone accident. Indeed, were she to have ruled otherwise, the trial judge would have had to have concluded that although Gilchrist was bed-ridden and in constant pain in April of 1982, somehow a miracle occurred between April, 1982 and *498 October, 1988 by which he became functionally whole, and capable of every normal activity except football and basketball, until the Ozone accident returned him to his 1982 disabled condition.[9]
Likewise, the trial judge's apparent conclusion that the services performed by his family members were not increased as a result of the Ozone accident is not manifestly erroneous. Furthermore, the trial judge was acting within her vast discretion as trier of fact in determining that the future medical treatment and comprehensive plan of life care as to which testimony was adduced were not the result of the Ozone injury.
Plaintiff's third assignment of error is without merit.
DEFENDANT'S ASSIGNMENT OF ERROR
Ozone contends that the trial judge committed prejudicial error in permitting the testimony of plaintiff's expert witnesses Dr. Robert Voogt, Harold Asher and Linda Bombardier, and in admitting expert reports from Voogt and Asher. Ozone claims it was illegally surprised by the expert testimony concerning plaintiff's comprehensive life care plan.
Ozone relies on LSA-C.C.P. 1428, which provides:
"(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to the identity and location of persons having knowledge of discoverable matters, and the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony."
Ozone relies also on the trial court's pre-trial order which requires each party to submit its experts' written reports and to make the experts available for discovery prior to setting the case for trial.
The record reflects that in November, 1989, Ozone propounded discovery interrogatories seeking the names of plaintiff's expert witnesses. Exhibits attached to the record copy of Ozone's motion in limine to exclude expert testimony show that Asher was identified on 10 February 1993, Voogt was identified on 7 May 1993 and Voogt's report was submitted on 27 May 1993. The record on appeal does not reflect when Bombardier was identified. There is no record of an attempt by counsel for Ozone to depose these expert witnesses or to continue the trial in order to obtain further discovery.
This Court set out the standard for review of a trial court's determination of the admissibility of these witnesses in Morrison v. J.A. Jones Construction Co., 537 So.2d 360, 363 (La.App. 4th Cir.1988):
"If a trial judge finds that a party has failed to satisfy a duty to supplement answers to interrogatories concerning a witness and his testimony, the judge has discretionary power to disallow the testimony at trial. La.C.C.P. Art. 1471 (reproducing the substance of former La.C.C.P. Art. 1513); See Nu-Lite Electrical Wholesalers v. Colonial Electric, 527 So.2d 498, 500 (La.App. 5th Cir.1988) and cases cited therein; Buxton v. Evans, 478 So.2d 736, 739 (La.App. 3d Cir.1985), writ denied 479 So.2d 921 (La.1985); Johnson v. Petit, 236 So.2d 304 (La.App. 4th Cir.1970). This power should be exercised only when the ends of justice dictate exclusion of the testimony. If the trial judge elects to allow the testimony, in the absence of abuse of the judge's discretion, there is no error. Goleman v. Kroger & Company, Inc., 462 So.2d 1330, 1333 (La.App. 3d Cir.1985); Giroir v. Pann's of Houma, Inc., 341 So.2d 1346, 1348 (La.App. 1st Cir.1976).
In this case, Ozone has not shown that it was unable to depose these experts prior to trial; indeed, the record is devoid of any evidence of Ozone's intent to seek further discovery from the experts once their identities *499 were known. Ozone, by its inaction, waived its objection to these witnesses and their reports. We find no prejudice to Ozone, and no abuse of the trial judge's discretion is allowing the expert witnesses to testify. Defendant's assignment of error is without merit.

CONCLUSION
The judgment rendered 13 September 1993 in favor of plaintiff/appellant Lloyd Gilchrist, Sr. and against the defendants, Ozone Spring Water Company and The Gray Insurance Company, Inc., jointly, severally and in solido in the full and true sum of $193,703.40 together with legal interest from date of judicial demand, until paid, and for all costs, reflecting an apportionment of fault of 40% to plaintiff and 60% to defendants, is affirmed.
AFFIRMED.
JONES, J., concurs in part; dissents in part.
JONES, Judge, concurring, in part; dissenting, in part.
The trial court concluded that plaintiff did not act reasonably with reference to the stairway. We disagree with this conclusion. There is no evidence that plaintiff's actions were in any way unreasonable in descending the stairs. There was no testimony that plaintiff attempted to run or descend the stairs too quickly or that he descended more than one stair at a time. In fact the record is clear that the stairway itself was unreasonably dangerous and that is the sole reason that plaintiff suffered the accident.
The trial court's conclusion seems to be based on defendant's status as a trespasser. Although the trial court acknowledged that Louisiana law had abandoned a landowner's immunity from liability as to trespassers, it asserted that plaintiff's status was a factor to be considered in determining whether plaintiff acted reasonably with reference to these stairs. The trial court wrote:
... We have to be concerned with the utility with reference to these particular stairs whether in an industrial plant such as this the owner is required to maintain these back stairs in the same fashion as they would front stairs that were easily accessible and available to the general public. Certainly, with employees who were familiar with these stairs, there were less warnings necessary or required in terms of posted warnings or verbal warnings. If this had been the front stairway that was used by visitors to the plant I think certainly we would hold the property owner to a higher standard of care than we would when we're dealing with utility stairs at an industrial plant where clearly the intent was to shut these stairs off and make them inaccessible to the general public, that was the sole purpose of putting a coded lock on this door.
The trial court concluded:
... This case certainly involves, even though we're not concerned with the old categories of licensee and trespassers, this case clearly involves someone who should not have been using the stairs in question, and for that reason the Court will assign 40 percent negligence to Mr. Gilchrist, Sr. with regard to this injury.
The trial court offered no other reasons for assigning plaintiff 40 percent negligence. The case law allows status to be considered as a factor in determining landowner liability. Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976) cert. denied 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976). However, in this instance status was the sole factor that the trial court relied on in finding plaintiff negligent. No analysis of comparative fault was made in order to support a finding that plaintiff was 40 percent negligent. In Soileau v. South Central Bell Telephone Co., 406 So.2d 182, 183-184 (La.1981), the court defined negligence as follows:
Negligence is a failure to observe or do something that one ought to have observed and done, and would have done or noticed with ordinary care. Plaintiff is held to have seen that which he should have seen.... Contributory negligence is a matter of fact to be determined in the light of the circumstances in each case.
As to the stairway in the instant case, a comparison can be made between this case and the "spring gun" cases. Katko v. Briney, *500 183 N.W.2d 657 (Iowa 1971); Prosser, Law of Torts, 4th ed. § 21 (1971). This stairway was like a trap set in that it looked innocuous but was unreasonably dangerous there was no announcement of danger to plaintiff.
In Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985) the Supreme Court cited provisions of the Uniform Comparative Fault Act, (2)(b):
In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
The Court listed various factors which may influence the degree of assigned fault:
(1) whether the conduct resulted from inadvertence or involved an awareness of the danger;
(2) how great a risk was created by the conduct;
(3) the significance of what was sought by the conduct;
(4) the capacities of the actor, whether superior or inferior;
(5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought;
(6) other traditional considerations, i.e., last clear chance, fault, negligence, etc.
The trial court failed to do an analysis of these factors in determining plaintiff's degree of fault but the majority has seized on the fact that plaintiff walked with a cane, thereby suggesting he was negligent for descending stairs. However, no allegations exist that plaintiff was advised not to descend stairs for medical reasons. Therefore, I am not inclined to find plaintiff negligent for doing so.
Furthermore, the trial court failed to consider whether the son was a contributing factor to this accident in that he failed to advise his father that there was another entrance designated for visitors to the site. It is not known whether the father was knowingly a trespasser since it was by virtue of his son's use of an access code that he obtained entrance to the stairway. It is my opinion that the trial court should have considered these factors in determining percentages of fault.
I would affirm that part of the trial court's judgment apportioning 60% liability to defendant. However, since the record contains no evidence to support a finding that the plaintiff was negligent, I would reverse the trial court's finding of 40% negligence on the part of the plaintiff.
NOTES
[1] Although Gilchrist alleged the stairs were defectively designed or manufactured, he did not bring suit against the manufacturer.
[2] By letter dated 25 April 1994, counsel for plaintiff advised this Court that "after speaking with Mr. Gilchrist and after further consideration, I decided not to pursue the application for writs of certiorari relative to Judge Johnson's order for additional evidence post-trial."
[3] On 28 February 1994, Ozone filed a Petition for Annulment of Judgment for Vice of Substance against Gilchrist, in Civil District Court for the Parish of Orleans, # 94-0318, alleging that the judgment appealed from herein "was obtained by fraud and/or ill practices on the part of" Gilchrist.
[4] Benenate testified that he subsequently left Ozone's employment "on okay terms."
[5] VanMatre is no longer employed by Ozone, and testified that he left on good terms with his former employer.
[6] The record shows that Junior's termination arose out of negligent driving on 13 September 1988 near the Ozone plant, in violation of company policy and safety rules. The action had been witnessed by fifteen persons. The company's safety committee voted on 13 October 1988 to discharge Junior.
[7] We note that Gilchrist could not have gained entry to the stairwell in which he was injured but for the action of Junior in using the employee access code. Junior's actions in bringing his disabled father up and down a stairway that Junior, as a former Ozone employee of several years, knew was dangerous could be considered a cause in fact of Gilchrist's injury, further justifying a diminution of the award.
[8] Neither counsel for plaintiff nor counsel for defendant moved to call any witnesses to controvert, explain or support the medical and Social Security records requested by the Court. While the record shows plaintiff's notice of application for supervisory writs and the trial court's order granting plaintiff until 23 July 1993 to apply for writs to review the trial court's action with respect to these records, plaintiff decided not to apply for writs to this court.
[9] The Social Security finding of total disability, and Gilchrist's medical status, cause all of his future medical treatments to be covered either by Social Security, Medicaid and/or Medicare. The payment records show these treatments to have been paid for by Medicare and Medicaid, and the supporting documentation notes that the treatments were not necessitated by an accident or injury.