662 So.2d 867 (1995)
Louis M. WILLIAMS, Plaintiff-Appellee,
v.
JONES TRUCK LINES, INC., Defendant-Appellant.
No. 27,465-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1995.
*869 John B. Morneau, Vivian, for appellant.
Walter S. Salley, Lunn, Irion, Johnson, Salley & Carlisle, Shreveport, for appellee.
Before WILLIAMS, J., and PRICE and SAVOIE, JJ. Pro Tem.
WILLIAMS, Judge.
In this worker's compensation action, the defendants Jones Truck Lines, Inc. (Jones) and its insurer, GAB Business Services, Inc., appeal a judgment that awarded the claimant, Louis Williams, temporary total disability benefits and medical expenses. For the reasons assigned below, we reverse.

FACTS
Louis Williams was employed as a truck driver for the defendant, Jones. On January 30, 1991, Williams was hauling two trailers in tandem from Shreveport to Houston. He stopped at Jones' terminal in Lufkin, Texas at approximately midnight to drop off and pick up a trailer. Because the terminal was closed for the day, Williams was working alone. After releasing one trailer and hooking up another, he tried to release a dolly that was lodged under the rear trailer. Williams testified that the dolly, also known as a converter gear, is a 2,000 pound steel device, equipped with a braking system and tires. The dolly is designed to carry 40,000 pounds and is used to maneuver the truck trailers. According to Williams, he tugged on the dolly, but it did not move. He then raised the trailer to get the weight off of the dolly gear. When he again grabbed and pulled on the dolly, it sprung out and forcefully struck his left knee, pushing and pinning him back against the lead trailer.
Williams testified that because no one was around to assist him, he pushed the dolly away and drove to a nearby store to use a telephone. He called Dallas and reported his injury, but the Lufkin terminal manager could not be reached. Williams decided to finish hooking up the trailers by himself and continue to Houston. After he dropped off the trailers, he hooked up two more trailers before returning to Shreveport the next morning. A co-employee took Williams to Dr. William Bundrick because of the pain and swelling in his left knee. At that time, Williams did not mention having any back pain. On February 3, 1991, Dr. Bundrick authorized him to return to work as a truck driver. Williams testified that he complained to Dr. Bundrick of back pain on February 8, 1991, during his second visit. Dr. Bundrick did not recall that he was told this information.
On April 3, 1991, Dr. Bundrick noted that Williams was complaining of lower back pain that had begun during the previous two weeks while driving and climbing in and out of the truck. Dr. Bundrick instructed Williams not to return to work because of his back condition and eventually referred him to a neurologist because of continuing complaints of back pain. Dr. Thomas Grahm, a neurosurgeon, examined Williams on June 12, 1991, and felt that Williams had lumbar radiculopathy, possibly resulting from nerve torsion caused by scarring of his previous surgery and the new injury. On June 24, 1991, Dr. Grahm opined that Williams' symptoms and physical findings were consistent with a back injury which could have resulted from the accident at work. Defendants paid the medical expenses related to Williams' knee injury but denied his claim for disability benefits as a result of the back injury.
Dr. Lewis C. Jones saw Williams on January 10, 1992. At that time, Williams complained of both left knee and back pain. Dr. Jones was of the opinion that examination of William's left knee was normal. He advised *870 Williams to see the neurosurgeon if back pain persisted. Williams underwent an MRI of his spine on March 28, 1992, at LSU Medical Center. The MRI showed a centrally bulging intervertebral disc at the L4-5 level. An area of enhancement of the bulging disc was felt to represent a small tear in the amulus fibrosis. Degenerative changes in the L4-5 disc were also identified. On July 27, 1992, Williams underwent a lumbar myelogram, which showed nerve root compression and amputation on the left. In September 1992, Williams was administered an epidural steroid injection in an attempt to relieve his back pain.
After a trial, the hearing officer found that Williams had met his burden of proving that he injured his left knee and lower back, on January 31, 1991, while in the course and scope of his employment and that this work-related injury aggravated his pre-existing back condition. The trial court awarded Williams temporary total disability benefits from the time of termination until he reaches maximum medical improvement and ordered defendants to pay all medical expenses related to his back treatment. The defendants appealed the hearing officer's judgment.

DISCUSSION

Admissibility of Medical Report
Defendants argue that the hearing officer was clearly wrong in relying on the medical opinion of Dr. Thomas Grahm. Citing Hearing Officer Rules 2143 and 2149, defendants contend that the medical report containing Dr. Grahm's opinion concerning the possible cause of Williams' back injury was not properly admitted into evidence. Defendants assert that Dr. Grahm's report was admitted with the provision that the record be left open to take his deposition. Because the deposition was never offered into evidence, defendants argue that the hearing officer's consideration of Dr. Grahm's report was erroneous. Defendants also contend that opinions contained in medical reports are hearsay.
In a worker's compensation case, expert medical testimony may be submitted by a report of any health care provider certified as a true copy in accordance with LSA-R.S. 13:3715.1. Hearing Officer Rule 2143. The medical records shall be accompanied by a certificate of the health care provider, stating in substance that the copy is a true copy of all records prepared by the health care provider in the ordinary course of business. LSA-R.S. 13:3715.1 Objection to any evidence shall be governed by the Louisiana Code of Evidence and the Louisiana Code of Civil Procedure. Hearing Officer Rule 2149.
Here, Dr. Grahm's report includes a notarized certification that the medical records are true and exact copies of the originals. Thus, the report substantially satisfies the requirements of Rule 2143. Further, LSA-C.E. Art. 803(6) includes opinions and diagnoses contained in medical reports or records as exceptions to the hearsay rule. Medical records maintained by a physician in his regular course of business as a provider of medical services are admissible under the business records exception to the hearsay rule. Gilchrist v. Ozone Spring Water Co., 93-2515 (La.App. 4th Cir.), 639 So.2d 489.
In Theus v. Schumpert Medical Center, 25,750 (La.App. 2d Cir. 5/4/94), 637 So.2d 631, the hearing officer admitted a physician's report over the objection of the defendant under circumstances quite similar to those presented here. On appeal, this court ruled that the hearing officer erred in admitting the unverified medical reports as evidence. The Louisiana Supreme Court reversed and remanded the case, ordering this court to consider the excluded medical records. Theus v. Schumpert Medical Center, 94-1443 (La. 12/9/94), 647 So.2d 1101. In the instant case, Williams submitted a verified medical report which is admissible as an exception to the hearsay rule. As a result, we cannot say that the hearing officer erred in admitting and considering Dr. Grahm's medical report.
As defendants assert in brief, the parties initially stipulated that the record would be left open for the taking of Dr. Grahm's deposition. However, at the close of the hearing, the hearing officer stated her understanding that there was no reason to leave the record open, and asked counsel if that was correct. There was discussion about a medical bill and *871 defense counsel stated that his only objection involved the opinion contained in Dr. Grahm's report. The hearing officer noted the objection and the case was submitted for decision, subject to an objection to the opinions contained in the medical report. As a result, the record was not left open. This assignment of error lacks merit.

ENTITLEMENT TO BENEFITS

Causation
Defendants next argue that the hearing officer was clearly wrong in finding that Williams' back injury was caused by the work-related accident. Defendants assert that Williams failed to show by a preponderance of evidence the causal relation between his back injury and the accident at work.
An appellate court may not set aside a hearing officer's findings of fact in the absence of manifest error or unless they are clearly wrong. Key v. Insurance Co. of North America, 605 So.2d 675 (La.App.2d Cir.1992). Where there is conflict in testimony, reasonable inferences of fact should not be disturbed on review. When a trial court's findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence. Rosell v. ESCO, 549 So.2d 840 (La.1989); Theus v. Schumpert Medical Center, 25,750 (La.App.2d Cir. 4/5/95) 653 So.2d 178.
In a worker's compensation proceeding, the claimant bears the burden of demonstrating by a preponderance of the evidence that an employment accident resulted in disability. Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320 (La.1985); Britton v. Morton Thiokol, Inc., 604 So.2d 130 (La.App.2d Cir.1992). Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Key v. Insurance Company of North America, supra. The testimony of a worker's compensation claimant alone may be enough to prove a work-related accident if there is no other evidence sufficient to discredit or cast doubt upon the claimant's version of the accident and his testimony is corroborated by circumstances following the accident. Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App.2d Cir. 1991).
An employee's preexisting disease or infirmity does not disqualify his worker's compensation claim if the work-related injury either aggravated, or combined with the disease or infirmity to produce the disability for which compensation is claimed. When a claimant proves that before the accident he had not exhibited disabling symptoms, but that commencing with the accident, the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, a claimant's work injury is presumed to have aggravated, accelerated or combined with any preexisting disease or infirmity to produce his disability. Walton v. Normandy Village Homes Association, Inc., supra; Lubom v. L.J. Earnest, Inc., supra. If the evidence is evenly balanced, or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation, then the claimant fails to carry his burden of proof. Lubom v. L.J. Earnest, Inc., supra.
In this case, Williams testified that he was injured when he pulled on a heavy dolly in order to dislodge it from under a truck trailer. He further testified that the dolly sprung loose and slammed into his left knee, pinning him against another trailer. He reported the accident and was taken to Dr. Bundrick the next morning for treatment of his knee. Williams stated that he complained of back pain to Dr. Bundrick during the examination on February 8, 1991, and to Mark Allen, defendant's dispatcher, in early February. Williams acknowledged that he underwent back surgery in 1980 following an automobile accident, but testified that he had no health problems and did not miss any work prior to the January 31, 1991, work-related injury. He stated that between the months of February and April 1991, he worked for several days, then took time off to rest his back and returned to work. He *872 testified that he stopped working in April 1991 because his back pain was unbearable. He was unable to sit in the truck seat for an extended period of time and was having trouble getting in and out of the truck. Williams maintained that he had not participated in any renovation work at his home after he was injured in January 1991.
The defendants introduced the deposition of the treating physician, Dr. Bundrick, to challenge claimant's testimony that his back pain began shortly after the work-related accident. Dr. Bundrick stated that he examined claimant on January 31, 1991, and treated him for a contusion and sprain of his left knee. Dr. Bundrick testified that he did not recollect the claimant mentioning any back problems at that time. He said that he or his nurse should have written a note in the medical record if claimant had mentioned back pain. Dr. Bundrick reported that he again saw claimant on February 8, 1991, because he continued to feel pain in his left knee. Dr. Bundrick next saw claimant on April 3, 1991, and his major complaint was lower back pain while driving during the last two weeks. Dr. Bundrick testified that he would not relate claimant's back injury to the January 31, 1991 accident.
Other witnesses appeared at the hearing on behalf of Williams, but they did not address the issue of causation. His neighbor, Vivian Watkins, testified that she saw him one month after the work accident when he visited her house. She reported that Williams spent time lying on her floor because he could not sit in a chair for an extended length of time. Claimant's brother, David Williams, testified that the claimant had not done any renovation work on his house since late January 1991. Freddy Hitt, a friend of the claimant, stated that he did not observe him suffering from back problems before 1991. Hitt also testified that they had hunted and fished together before the accident, but not afterward.
The medical evidence introduced by the claimant failed to show that it was more probable than not that the back injury was caused by the work-related accident. Dr. Grahm was of the opinion that the claimant suffered from lumbar radiculopathy. However, Dr. Grahm was only able to state that the claimant's symptoms and physical findings could possibly have resulted from the work-related accident.
The conclusion of the workers' compensation hearing officer is primarily based on the claimant's testimony and the opinion of Dr. Grahm. However, the treating physician did not relate the claimant's back injury to the work-related accident. Moreover, in the sole medical opinion offered by claimant, Dr. Grahm merely stated that his back pain could possibly have resulted from the accident. As a result, the claimant has failed to satisfy his burden of proving by a preponderance of evidence that the work-related accident caused his back injury. Therefore, the hearing officer was clearly wrong to conclude otherwise.

Temporary Total Disability
The defendants contend that the trial court erred in finding that the claimant suffered a disabling injury. Defendant asserts that the medical evidence fails to show that the claimant could not return to work as a truck driver.
Compensation benefits are available for an employee who suffers an injury that produces a temporary total disability to engage in any self-employment or occupation for wages. Compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment. LSA-R.S. 23:1221(1). The provisions of Sec. 1221(1)(c) requiring proof by clear and convincing evidence were enacted in 1989 and apply to compensable injuries occurring after January 1, 1990. Green v. Conagra Broiler Co., 26,599 (La.App.2d Cir. 3/1/95), 651 So.2d 335; Tanner v. International Maintenance Corp., 602 So.2d 1133 (La.App. 1st Cir.1992). To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La. 1976); Green v. Conagra Broiler Co., supra.
*873 In this case, Dr. Bundrick, the treating physician who examined claimant shortly after the accident, testified that he would not relate claimant's back injury to the January 31, 1991 accident. Dr. Grahm, who saw claimant over four months later, could only report that claimant's pain symptoms were consistent with a back injury which "could have possibly happened from the accident he described." Dr. Grahm did not state that the claimant was unable to work at that time. Dr. Graham was not deposed and did not testify. Although there is evidence that the claimant sought medical treatment at various times and was examined by several physicians, none of those doctors reported an opinion that claimant was physically unable to work. The observations and opinions of the treating physician, although not irrebuttable, are to be accorded greater weight than those of a physician who has not served in that capacity. Britton v. Morton Thiokol, Inc., supra.
The only evidence of disability consisted of claimant's subjective complaints of pain in the lower back and left leg. The claimant testified that he was unable to bend over, stoop, sit or stand for any length of time because of his back pain. For this reason, he stated that he was unable to do any type of work. However, there is no expert testimony to show that these subjective symptoms would disable him from working.
The record does not contain expert medical testimony or objective medical evidence that the claimant was physically unable to engage in any type of employment. The only evidence to support the hearing officer's finding of temporary total disability is the claimant's own testimony, which was contested, and various medical records that did not address the claimant's physical ability to work. Under the circumstances, we are constrained to find that the claimant's evidence does not meet the objective standard of clear and convincing evidence required by R.S. 23:1221(1)(c). The hearing officer was legally wrong to conclude otherwise.

CONCLUSION
For the foregoing reasons, the judgment of the hearing officer awarding claimant benefits for temporary total disability and medical expenses is reversed. Costs of this appeal are assessed to the appellee, Louis Williams.
REVERSED.