685 So.2d 1140 (1996)
Steven BALSAMO, Plaintiff-Appellee,
v.
Danny JONES, Defendant-Appellant.
No. 28885-CA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 1996.
*1142 Patricia L. Barfield, Baton Rouge, for Defendant-Appellant.
Francis C. Broussard, Monroe, for Plaintiff-Appellee.
Before NORRIS, BROWN and WILLIAMS, JJ.
NORRIS, Judge.
The defendants, Danny Jones and Louisiana Worker's Compensation Corporation ("LWCC"),[1] appeal an order of the Worker Compensation Hearing Officer ("WCHO") in favor of the plaintiff, Steven Balsamo. The WCHO found that Balsamo sustained a workrelated injury, awarded accrued medical expenses, ordered the defendants to provide cervical, wrist and knee surgery, and assessed penalties of $750 and attorney fees of $1,000. Balsamo has answered the appeal, seeking additional attorney fees. For the reasons expressed, we amend and affirm.

Factual and procedural background
Balsamo, a concrete finisher, was hired by Danny Jones, who is apparently a general contractor with his brothers Johnny and Bobby Ray Jones. Balsamo's job was to pour and finish concrete at Kitchen Brothers Mfg., a sawmill in south Monroe; the Joneses' job was to enlarge the mill and construct an elevated conveyor belt for lumber. Balsamo's employment was on an "as needed" basis, and entailed about three days of concrete work. Balsamo usually brought one or two men to assist him; on the date of the accident, November 2, 1994, he was using Floyd Cook and Lester Hatfield. There were also employees of Kitchens Brothers and of the Joneses on the site most of the time.
When they were nearly through pouring an east-west slab on November 2, Balsamo and two of Jones's men were raking concrete as it came off the truck. According to Balsamo, he hollered to the truck driver to give another load; when he heard the truck rev up, he straightened himself, turned to guide the concrete, and struck his head on one of the steel beams that overhung the slab. He testified that he hit his forehead extremely hard, close to the bridge of his nose; he fell on one knee in reinforcement wire, where concrete had not yet been poured. Jones's men (identified by Balsamo only as "a Mexican and a black guy") helped him up, and he resumed raking. Moments later, he noticed his head was bleeding and he was dizzy, so he sat down a while. He did not finish the pour.
Balsamo testified that neither of his men saw the accident, but he told one of them, Lester, that it had happened; Lester corroborated this. Balsamo also testified that he told Johnny Jones about the accident at the end of the day, but Johnny denied it; in fact, he testified that he was supervising Balsamo the entire day and did not see any accident. One witness, William Smith, testified that he saw it and generally corroborated Balsamo's account. Smith was the cement truck driver who was waiting on Balsamo's order to break another load.
Balsamo testified he did not go to a doctor at first because he thought he would get better; however, headaches and dizziness persisted, and his left knee continued to swell, so he went to the St. Francis emergency room on November 17 and reported knee and neck pain to Dr. Charles Blackmon. A radiologist, Dr. Barraza, detected no fractures. Dr. Blackmon prescribed conservative treatment and advised follow-up with an orthopedist or neurosurgeon.
Danny Jones filed an accident report with LWCC in late November.[2] In it he related Balsamo's account of the accident, that he had hit his head on a steel beam, and "when he fell he twisted his neck, back and knee." Ex., 39.
Balsamo testified that he has worked almost continuously since the accident, albeit *1143 in some pain. He saw an orthopedist, Dr. Douglas Brown, in January 1995, again reporting that he struck his head on a beam and fell, injuring his neck and left knee. He also complained, for the first time, of numbness in his left arm and hand. Dr. Brown found no fractures, but diagnosed "left meniscal tear, post traumatic, left carpal tunnel syndrome, occupationally related, left thoracic outlet syndrome, possibly post traumatic, pre-existing degenerative C3, 4, 5 discs." His report recommended arthroscopy and partial meniscectomy of the left knee, on an outpatient basis, and a nerve conduction study on the left hand; if this showed a compressed carpal tunnel, then a carpal tunnel release could be performed at the same time as the arthroscopy. Ex., 56. In a follow-up note of April 4, 1995, Dr. Brown reiterated the need for the nerve conduction study and knee arthroscopy. There is no mention of neck surgery. The nerve conduction study, performed on April 6, showed "possible compression of the ulnar nerve at wrist and median nerve." Ex., 53.
Balsamo filed this contested claim in March 1995. He alleged that he had injured his neck and knee and, for the first time, his wrist; however, he described the accident as he "hit head on beam, fell twisting knee." R.p. 3. Jones's defense was that the accident was "staged" and Balsamo was not disabled because he worked continuously after the incident.
At the hearing in December 1995 Balsamo waived his claim for weekly benefits because he works for cash only and keeps no wage records. Balsamo and Smith testified about the accident; Hatfield and the Joneses testified that they saw no accident. Ronald Talton, an employee of Balsamo's who was not present on November 2, testified about the wage agreement between Balsamo and Jones. Nora Washington, LWCC's adjuster, testified as to her handling of the claim and decision not to pay. The St. Francis medical records were introduced in lieu of expert testimony or depositions. Regarding his disability, Balsamo stated that as a result of this accident, he injured his neck, knee and wrist, sustaining pain he had never experienced before. However, he admitted on cross examination that he had indeed suffered neck pain and headache prior to this injury, in connection with an auto accident in 1986. He also admitted on cross that he slipped and fell in Super One and sprained his ankle; although he mentioned this in a discovery deposition about one month before the hearing, defense counsel asked the WCHO to hold the record open for the hospital records of that accident. Balsamo's attorney did not object. The WCHO refused, however, citing a Hearing Officer rule.
Ruling from the bench, the WCHO found that the only disinterested witness was Smith, who saw an accident. She stated that Balsamo had trouble with his memory, but his account of the accident was consistent with his deposition and with the history he gave at St. Francis. She also noted that Balsamo related the accident to his employees, Hatfield and Talton. By contrast, she found the Jones brothers' testimony to be self-serving. She therefore accepted Balsamo's account and found a work-related accident. She found that Dr. Blackmon at St. Francis "diagnosed cervical and knee problems consistent with the accident," and that Balsamo was therefore "entitled to the recommended treatment from Dr. Brown." She also found that Dr. Brown wanted a nerve conduction study on Balsamo's left hand; she ordered this, with surgery if shown to be necessary. She awarded unpaid medical bills of $536. Finally she found Jones and LWCC were arbitrary and capricious in failing to pay the claim, so she assessed penalties of $750 and attorney fees of $1,000.
The ruling was reduced to an order of January 9, 1996, which directed the defendants to pay for the treatment recommended by Dr. Brown, "including cervical surgery, wrist surgery, and knee surgery." R.p. 171 (emphasis added).

Applicable law
Compensation benefits are due any claimant who establishes personal injury by accident arising out of and in the course of employment. La. R.S. 23:1031 A. The claimant bears the burden of proving a workrelated accident by a preponderance of the evidence. Bruno v. Harbert Int'l Inc., 593 *1144 So.2d 357 (La.1992). Proof by a preponderance means that the evidence, taken as a whole, makes the fact sought to be proved more probable than not. Williams v. Jones Truck Lines Inc., 27,465 (La.App.2d Cir. 11/1/95), 662 So.2d 867, writ not consid. 95-3082 (La.2/16/96), 667 So.2d 1044. The claimant's testimony may suffice to meet the burden, provided there is no other evidence sufficient to discredit or cast doubt upon the claimant's version of the incident, and his testimony is corroborated by circumstances following the accident. West v. Bayou Vista Manor Inc., 371 So.2d 1146 (La.1979).
The WCHO's determinations as to credibility will not be disturbed on review unless they are manifestly erroneous. Bruno v. Harbert Int'l, supra. The manifest error standard accords great deference to the WCHO, for as fact finder the WCHO is in the superior position to assess the demeanor and tone of voice that are crucial to the issue of credibility. Rosell v. ESCO, 549 So.2d 840 (La. 1989). The WCHO's decision to credit the testimony of one of two or more witnesses can virtually never be plainly wrong. Id.
In the event of a compensable injury, the employer or insurer is obligated to furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of the State as legal. La. R.S. 23:1203 A. The claimant must prove by a "reasonable preponderance of the evidence the necessity and relationship of treatment provided by the physician to the work-related accident." Lynn v. Berg Mechanical Inc., 582 So.2d 902 (La.App. 2d Cir. 1991), and citations therein.
Since 1989, work-related carpal tunnel syndrome has been classified as an occupational disease and compensable. La. R.S. 23:1031.1 B (amended by La. Acts 1989, No. 454, effective January 1, 1990). However, if any occupational disease recognized by statute is contracted by an employee while performing work for a particular employer in which he has been engaged for less than 12 months, then the occupational disease is presumed to be non-occupational and not to have been contracted in the course of and arising out of the employment. R.S. 23:1031.1 D; Dibler v. Highland Clinic, 27,274 (La.App.2d Cir. 9/27/95), 661 So.2d 588. Nevertheless, the claimant may overcome this presumption by proving that the occupational disease was contracted during the course of the employment "by an overwhelming preponderance of evidence." Id.; Ford v. Hart Associates, 605 So.2d 713 (La.App. 2d Cir. 1992).
The employer or insurer must pay benefits within 14 days of notice of the injury and loss; failure to pay timely subjects the liable party to a penalty of 12%, "unless such nonpayment results from conditions over which the employer or insurer had no control" or "the employee's right to such benefits has been reasonably controverted by the employer or his insurer." La. R.S. 23:1201 E. The statute also provides for attorney fees in the event that failure to pay benefits within 60 days of receipt of written notice is found to be "arbitrary, capricious, or without probable cause." R.S. 23:1201.2.[3] To reasonably controvert a claim, the employer or insurer must have factual or medical information of such a nature that it reasonably counters that provided by the claimant. Davis v. Jones Baldwin Music Co., 27,545 (La.App.2d Cir. 11/1/95), 662 So.2d 803. The WCHO has great discretion in deciding whether to allow or disallow penalties and attorney fees, and the decision will not be disturbed absent abuse of that discretion. McKenzie v. City of Bossier City, 585 So.2d 1229 (La.App. 2d Cir.1991).

Discussion: Occurrence of an accident
By their first assignment the defendants urge the WCHO erred in ruling that Balsamo *1145 sustained an accident. They argue that contrary to the WCHO's oral findings, Balsamo's testimony was riddled with inconsistencies and not really corroborated by the eyewitness, Smith. Specifically, they cite Smith's testimony that Balsamo fell and "kind of buckled to his knees a little bit," not that he actually struck his knee; Balsamo's failure to report a knee or wrist injury at St. Francis hospital on November 17; his failure to name the two eyewitnesses described in his initial statement to the adjuster; his claim that the blow made his forehead "bleed pretty good," a point corroborated by no one; the Joneses' testimony that Balsamo never reported an accident, contrary to Balsamo's assertion; various discrepancies between Balsamo's and the Joneses' account of their wage agreement; Johnny Jones's positive assertion that he was watching Balsamo the entire day and did not see the accident happen; and Balsamo's overall extremely poor recall of his medical history. All of this, the defendants contend, casts grave doubt on Balsamo's credibility and make it virtually impossible for him to have sustained the accident described.
Although we might not subscribe to the WCHO's statement that Balsamo "didn't have inconsistencies" in his testimony, we do not find she abused her discretion in accepting portions of Balsamo's and Smith's versions of the incident over that of the Joneses. The WCHO noted Balsamo's memory lapses but felt they did not affect his claim that he struck his head at work and fell to his knees. A claimant's failure promptly to report an accident to his treating physician or promptly to file an accident report with his employer does not necessarily make his claim suspect. Bruno v. Harbert Int'l, supra. Even from the impassive record, we can understand the WCHO's decision to discount Johnny Jones's statement that he was watching Balsamo every minute of the work day and saw no accident. We see no manifest error in her perception of the Joneses' potential bias. Rosell v. ESCO, supra. In short, the WCHO was confronted with extremely divergent accounts of what happened on November 2, and she decided to find that Balsamo did in fact strike his head rather severely and fall to the ground. On this record we cannot declare that she was plainly wrong. Bruno v. Harbert Int'l, supra; Rosell v. ESCO, supra. This assignment of error lacks merit.

Necessary medical treatment
By their second assignment the defendants urge the WCHO erred in finding that the medical treatment ordered was work-related or necessary. They argue that no evidence links Balsamo's neck and wrist injuries to the accident, and that the evidence to support the knee injury is insufficient. We will consider separately each element of the treatment ordered by the WCHO:
Knee surgery. Balsamo testified that after he struck his head on the beam, he "went down," "straight down," and his knee landed in reinforcement wire. The defendants stress Smith's recollection that Balsamo "kind of buckled to his knees a little bit," and Dr. Blackmon's report of November 17 that he "fell backwards," to argue that Balsamo did not actually injure his knee in the fall. However, for the reasons already discussed, the WCHO was entitled to find that an accident really did occur and Balsamo fell, striking his knee. Although Dr. Blackmon's report does not state that Balsamo said he struck his knee in the fall, it does record the complaint of knee pain. The obvious thrust of the doctor's report was that the knee injury was part of the accident, a point to which Balsamo testified. Later, Dr. Brown diagnosed a post traumatic medial meniscal tear, apparently consistent with falling to one's knee on a rough surface. In two reports he recommended arthroscopic surgery.
On this showing, the WCHO was entitled to find that Balsamo proved by a reasonable preponderance of the evidence that the knee injury was occasioned by the workrelated accident and that the surgery was reasonable and necessary to correct the problem. Lynn v. Berg Mechanical, supra. This portion of the order will be affirmed.
Wrist surgery. Balsamo testified that the job at Kitchens Brothers entailed three days of concrete finishing in November 1994; this was corroborated by his helper, Lester Hatfield, and by Danny Jones. Balsamo also testified that the accident occurred on his *1146 second day of work, November 2. After examination in January 1995, Dr. Brown suspected "carpal tunnel syndrome, occupationally related," apparently in reference to a disease characteristic of and peculiar to the occupation of concrete finishing. Nerve conduction tests showed possible compression of the ulnar and median nerves. Dr. Brown's report, however, does not link the condition to this accident or to Balsamo's employment with Jones. There is no deposition or medical testimony to support the "impression."
Because Balsamo had worked for Jones only two days, far less than the 12 months necessary to create the presumption of an occupational disease under R.S. 23:1031.1 D, then the condition is presumed to be non-occupational. Ford v. Hart Associates, supra. The presumption can be rebutted by "an overwhelming preponderance" of evidence to the contrary. The only evidence purporting to do so was one sentence in Dr. Brown's report, saying only that it was "occupationally related," and Balsamo's testimony that the pain started with the accident. Dr. Brown's "impression" does not disclose any knowledge of the nature or duration of Balsamo's work for Jones. Thus it is insufficient to make an "overwhelming preponderance" of evidence. In fact, it is considerably less than the evidence found sufficient to rebut the presumption in Dibler v. Highland Clinic, supra, and Ceasar v. Crispy Cajun Restaurant, 94-30 (La.App. 3d Cir. 10/5/94), 643 So.2d 471, writ denied 94-2736 (La.1/6/95), 648 So.2d 931, and greatly less than that found insufficient in Ford v. Hart Associates, supra, and Facio v. Glaviano, 95-35 (La.App. 5th Cir. 6/28/95), 658 So.2d 33. Balsamo's uncorroborated testimony that the pain began with the accident is contradicted by the fact that he did not complain of wrist pain and numbness until over two months after the accident, during which time he worked almost continuously at other jobs. Further, there is no medical corroboration. On the record presented, his testimony does not exclude the probability that other employment caused the wrist condition and certainly does not rise to the level of an "overwhelming preponderance." See Dibler v. Highland Clinic, supra, (dissenting opinion of Brown, J.). The WCHO was plainly wrong to find otherwise; this portion of the award will be vacated, and the order amended accordingly.
Neck surgery. Balsamo testified that his neck began to hurt after the accident; Dr. Blackmon's report recommended conservative treatment; later, Dr. Brown diagnosed "pre-existing degenerative C3, 4, 5 discs." The WCHO ordered the defendants to provide "cervical surgery" recommended by Dr. Douglas Brown. This court has carefully combed the record and finds nothing in Dr. Brown's reports, or anywhere else, to indicate that surgery, or any kind of medical procedure for the neck, was ever suggested, recommended, or found to be related to the accident. In short, there is not one scintilla of evidence to support this portion of the order. See Chitman v. Davison Trucking, 28,073 (La.App.2d Cir. 2/28/96), 669 So.2d 671, and citations therein. Moreover, degenerative disc disease is expressly excluded from the coverage of the Act. R.S. 23:1031.1 B. This portion of the award will be vacated and the order amended accordingly.

Submission of case
By their fourth assignment the defendants urge the WCHO erred in not holding the record open for the introduction of records from E.A. Conway Hospital, arguing these could not be obtained prior to the hearing. The defendants point out that Balsamo's counsel stated he had no objection to holding the record open, and argue that hospital records would show that contrary to his testimony at the hearing, Balsamo was complaining of neck and knee pain as recently as 1991. They finally argue that the WCHO has the discretion to hold the record open when the circumstances require it.
Here the WCHO refused to hold open the record on the basis of Hearing Officer Rule 2159, which provides, in pertinent part:
A case or other matter shall be considered as having been fully submitted for decision immediately upon the conclusion of trial or hearing. All testimony, depositions, documents and evidence shall be introduced on or prior to the day of the trial.
*1147 The objective of the rules is to resolve the merits of the controversy as equitably, summarily and simply as may be, and in pursuit of this goal the WCHO is not bound by technical rules of evidence or procedure. La. R.S. 23:1317 A; Gotte v. Magnum Elec. Co., 628 So.2d 1168 (La.App. 3d Cir.1993). Thus on a showing of good grounds the WCHO may hold open the record for the receipt of additional evidence. See Kennedy v. Johnny F. Smith Trucking, 940618 (La.App. 1st Cir. 3/3/95), 652 So.2d 526; Meche v. Foremost Management Corp., 93-1390 (La.App. 3d Cir. 5/4/94), 640 So.2d 585, writ denied 96-0152 (La.3/15/96), 669 So.2d 429.
At the conclusion of the hearing, defense counsel stated that "Balsamo testified in his deposition that he had been treated there [at E.A. Conway] * * * and I didn't get the release until too late to get the records in time for trial." R.pp. 161-162. Although the WCHO erroneously stated that she lacked the discretion to consider the motion, we find that a proper exercise of discretion would have warranted denying it. The deposition was taken on November 10, and the hearing held on December 14, 1995. The WCHO could find that LWCC had sufficient time in the intervening period of nearly five weeks to obtain the Conway records and modify its pretrial statement in accord with Hearing Officer Rule 2157 G. Cf. Kennedy v. Johnny F. Smith Trucking, supra. For these reasons we find no abuse of the WCHO's discretion; this assignment does not present reversible error.

Penalties and attorney fees
By their third assignment the defendants urge the WCHO erred in awarding penalties and attorney fees. They argue they were not arbitrary or capricious in failing to contact the eyewitness, William Smith, concerning the statement given to Balsamo's attorney in April and faxed to LWCC in June 1995. In support they argue that by June they had already interviewed every witness that Balsamo previously identified, all of whom denied that any accident occurred; and that one of the alleged witnesses, Floyd Cook, provided information that cast serious doubts on Balsamo's story. They also point out that contrary to Balsamo's claim that he did not know about Smith until much later, Smith admitted that he spoke to Balsamo only about one month after the accident.
Ms. Washington agreed that LWCC had an ongoing duty to investigate the case, and this included her duty to interview all witnesses. Nevertheless she admitted that after reading Smith's statement there was "no real reason why" she did not speak with him. R.p. 77. The thrust of her position was that after speaking to the Joneses and their employees, she could not find anyone to corroborate Balsamo's claim. This testimony will support the WCHO's implicit finding that the defendants made up their mind to deny the claim before learning of the only corroborating eyewitness. Under the circumstances, the failure to contact Smith and ascertain his accuracy was arbitrary and capricious on LWCC's part. Moreover, Ms. Washington testified that information she took from one of Balsamo's employees, Floyd Cook, was central to her decision to deny the claim. R.p. 76. However, his subpoena was returned unanswered, and no deposition was taken when he may have been available. LWCC's failure to produce this evidence "central" to the denial of the claim amounts to an absence of factual or medical information to counter the claimant's position. Davis v. Jones Baldwin, supra. On the instant record, we find the WCHO did not abuse her discretion in assessing penalties and attorney fees.
By answer to appeal, Balsamo requests additional attorney fees for the time involved in the appeal. Because the defendants advanced meritorious arguments as to part of the medical treatment, no additional attorney fees will be awarded.

Conclusion
For the reasons expressed, the order is amended to provide as follows:
IT IS ORDERED, ADJUDGED AND DECREED that:
1. Defendants pay for the knee surgery recommended by Dr. Douglas Brown[.]
The order is in all other respects affirmed. Costs of appeal are assessed one-half to the *1148 defendants, Louisiana Worker's Compensation Corporation and Danny Jones, and onehalf to the claimant, Steven Balsamo.
AMENDED AND AFFIRMED.
BROWN, J., concurs in the results.
NOTES
[1] The insurer is erroneously referred to in the caption of the case as the State of Louisiana. LWCC was created by special statute to carry high-risk employers but is not a State agency. La. Const. art. 12 § 8.1(D); R.S. 23:1393 A.
[2] Jones testified he learned of the accident on November 17 from a clinic in West Monroe where Balsamo sought treatment before going to St. Francis.
[3] The penalty and attorney fee provisions have recently been amended. La. Acts 1995, No. 1137. For accidents occurring on or after June 29, 1995, the "arbitrary and capricious" standard for assessing reasonable attorney fees will apply only if the employer or insurer discontinues paying benefits. It would not apply in the instant case, where the defendants always refused to pay. La. R.S. 23:1201.2. For failure to pay benefits within 60 days of written notice, a penalty and reasonable attorney fees may be assessed unless "the claim is reasonably controverted" or if such nonpayment results from conditions over which the defendants had no control. R.S. 23:1201 F(2).