# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-343


ROBBY SANDIFER

VERSUS

## CALCASIEU PARISH PUBLIC WORKS, ET AL.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 03
PARISH OF CALCASIEU, NO. 14-06686
CHARLOTTE A. L. BUSHNELL, WORKERS' COMPENSATION JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Shannon J. Gremillion, Judges.

**GREMILLION, J., dissents and assigns reasons.**

                                                                  **AFFIRMED.**


Thomas E. Townsley
Law Office of Thomas E. Townsley LLC
711 Pujo Street
Lake Charles, LA 70601
Telephone:  (337) 430-0994
COUNSEL FOR:
        Plaintiff/Appellee - Robby Sandifer

Eric J. Waltner
Allen & Gooch, A Law Corporation
P. O. Box 81129
Lafayette, LA 70598-1129
Telephone:  (337) 291-1400
COUNSEL FOR:
        Defendant/Appellant - Calcasieu Parish Police Jury

**THIBODEAUX, Chief Judge.**

The Calcasieu Parish Public Works (hereafter "the Parish") appeals a judgment in favor of plaintiff-appellee, Mr. Robby Sandifer, which denied its claimed offset for disability benefits and awarded Mr. Sandifer attorney fees. The Parish contends that it is entitled to a credit/offset for the amount it contributed to the Parochial Employees' Retirement System ("PERS"). Additionally, the Parish alleges that the trial court committed an error awarding Mr. Sandifer attorney fees and finding that Mr. Sandifer was permanently and totally disabled. Mr. Sandifer asserts that the Parish failed to reasonably controvert Mr. Sandifer's disability status and failed to establish the contribution for the credit/offset. We affirm the judgment in favor of Mr. Sandifer. Furthermore, we grant Mr. Sandifer an additional $5,000 in attorney fees for defending this appeal.

I.

**ISSUES**

We must determine whether the trial court erred in holding that the employer was not entitled to a credit/offset for disability benefits paid by the employer and received by the plaintiff. We must also determine whether the trial court erred in awarding attorney fees. Additionally, this court must determine whether subsequent attorney fees should be awarded to the plaintiff for defending this appeal.

## II.

## <u>FACTS AND PROCEDURAL HISTORY</u>

Mr. Sandifer was injured in the course and scope of his employment with the Parish. On August 16, 2005, Mr. Sandifer and another employee of the Parish were attempting to install a piece of metal onto a gradeall when the metal piece slipped, causing Mr. Sandifer to jerk forward, pulling his lower back. Mr. Sandifer felt severe low back pain and felt his legs buckle.

Mr. Sandifer had back surgery approximately nine months before sustaining his work-related injury. Mr. Sandifer was treated in Houston, Texas by Dr. Todd Trask, who performed back surgery. After he sustained a back injury during work, Mr. Sandifer returned to Dr. Trask who then referred him to Dr. Richmond Simmons who handled workers' compensation-related cases. The doctors recommended a spinal cord stimulator implant because Mr. Sandifer experienced pain radiating down his legs which caused him to fall frequently. The nurse case manager sent Mr. Sandifer to see Dr. Patrick Juneau in Lafayette. Dr. Juneau found that Mr. Sandifer needed a two-level decompressive laminectomy and fusion at L4-5 and L5-S. Mr. Sandifer underwent the surgery on January 4, 2005. Mr. Sandifer experienced some improvement after the surgery but later developed low back pain and pain which radiated down his legs. Subsequently, Dr. Juneau referred Mr. Sandifer to Dr. Frank Lopez for pain management.

Dr. Lopez saw Mr. Sandifer on May 20, 2009, and noted that Mr. Sandifer experienced pain in his low back, neck, chest, groin, buttocks with pain radiating down both legs. Dr. Lopez opined that Mr. Sandifer had low back pain and failed back surgery syndrome. Dr. Lopez ordered an MRI which showed Mr. Sandifer had a free/extruded disc fragment between L3-4 and L4-5. Dr. Lopez

then referred Mr. Sandifer to Dr. Erich Wolf, a neurosurgeon, with the first appointment occurring on August 12, 2013. Dr. Wolf's notes reflect moderate tenderness along the lumbar spine, and muscle tenderness ranging from moderate to severe from L-2 to L-5. Mr. Sandifer communicated to Dr. Wolf that his pain was an eight on a scale of one to ten, causing him severe functional impairment and impairing his ability to sleep. Dr. Wolf performed further testing which reflected tenderness and abnormalities in Mr. Sandifer's muscle groups in his back. Dr. Wolf determined that a conservative course of treatment and administering injections would be appropriate for Mr. Sandifer's care. The conservative treatment provided little relief for Mr. Sandifer. Subsequently, on August 28, 2013, Dr. Wolf noted that an MRI of Mr. Sandifer's lumbar spine showed a free fragment of disc and disc degeneration. Dr. Wolf recommended another fusion or discography which was denied by Utilization Review because the Medical Director said there was no pre-psychosocial evaluation. Dr. Wolf referred Mr. Sandifer to Jodie Guth for the evaluation which took place on August 19, 2014. Dr. Wolf resubmitted the request for surgery in September of 2014. Mr. Sandifer received the discogram in early 2016.

Dr. Wolf referred Mr. Sandifer to an orthopedic surgeon, Dr. Clark Gunderson, who recommended injections into the sacroiliac joint with CT guidance. The injections were denied before being approved on appeal to the Medical Director. The procedure was performed on July 28, 2016.

In October 2016, the Medical Director approved a second SI injection after Dr. Wolf met with Mr. Sandifer following his bilateral sacroiliac joint injection. Dr. Wolf reported that Mr. Sandifer experienced a sixty-percent improvement from the treatment.

3

Although Mr. Sandifer saw improvement with the injection, the doctors who evaluated Mr. Sandifer agree that he is permanently and totally disabled. Mr. Sandifer is in severe pain and has been out of work for over eleven years. Moreover, two vocational counselors evaluated Mr. Sandifer and found that Mr. Sandifer was functionally or partially illiterate, had been in special education classes, lacked diversity in his work history, and relied on his mother and girlfriend to help with bills and paperwork. Additionally, Mr. Sandifer was unable to function without his pain medication. Thus, the vocational counselors determined that Mr. Sandifer was unable to return to work and concluded that there was no reasonable probability that he could be rehabilitated to the extent he can achieve gainful employment.

A trial was held to determine whether Mr. Sandifer is considered permanently and totally disabled and whether the Parish was able to show what they contributed to Mr. Sandifer's disability/retirement benefit in order to obtain a credit/offset for receipt of benefits from PERS. The parties stipulated that Mr. Sandifer was injured in the course and scope of his employment. Additionally, the parties stipulated that Mr. Sandifer's average weekly wage is $512.80, with a compensation rate of $341.86.

The Parish contended that it was entitled to an offset of 48.85 percent of what PERS pays Mr. Sandifer. The Parish relied on the testimony of Ms. Dianne Tulley, the administrative director of PERS, to determine that this percentage was the amount contributed by PERS. However, Mr. Gary Curran, the actuary for PERS and several other state retirement funds, testified that it is impossible to determine the percentage of contributions the employer makes to the trust to fund disability benefits for an individual employee because the employer

contribution rate is paid by the total salary of all employees. Furthermore, ad valorem and revenue sharing account for a portion of the employer's contribution. PERS is co-mingled with two hundred entities from sixty-two parishes, and accounts for all employees of those entities and their ancillary beneficiaries. The workers' compensation judge found that the Parish failed to carry its burden of proof for the contribution to determine what the credit/offset would be.

The trial court also found that Mr. Sandifer would not be able to achieve suitable gainful employment based on the evaluations provided by Mr. Sandifer's doctors coupled with the opinions of the vocational counselors. Additionally, the trial court found Mr. Sandifer was entitled to penalties and attorney fees. The trial court imposed $2,000 in penalties for the improper taking of an offset. Moreover, the trial court awarded $20,000 in attorney fees to Mr. Sandifer for prosecuting the case.

The Parish filed a timely Motion for New Trial. The Parish contended that they had never taken an offset and, therefore, the penalty was improper. The Parish further contended that the entire basis for awarding the attorney fees was based on the penalty and, thus, the attorney fees were also improper. Mr. Sandifer agreed that the Parish correctly requested that the court vacate the penalty of $2,000 because the Parish did not take a credit/offset. However, Mr. Sandifer asserted that the court was within its authority to grant $20,000 in attorney fees. The workers' compensation judge vacated the penalty of $2,000 and reduced the attorney fees awarded to Mr. Sandifer from $20,000 to $12,500.

5

III.

**STANDARDS OF REVIEW**

"Our court reviews the factual findings of a workers' compensation court under the manifest error or clearly wrong standard of appellate review." *Romero v. Northrop-Grumman*, 01-24, p. 6 (La.App. 3 Cir. 5/30/01), 787 So.2d 1149, 1153 (citing *Smith v. Louisiana Dep't of Corrections*, 93-1305 (La. 2/28/94), 633 So.2d 129). When the record is viewed in its entirety, this court will not reverse a workers' compensation court if the findings were reasonable. *Romero*, 787 So.2d at 1153 (citing *Stobart v. State D.O.T.D.*, 617 So.2d 880 (La.1993)).

The imposition of penalties and attorney fees on an employer is a question of fact and this court reviews the workers' compensation judge's finding under the manifest error standard. *Romero*, p. 10, 787 So.2d at 1155 (citing *Wiltz v. Baudin's Sausage Kitchen*, 99-930 (La.App. 3 Cir. 6/19/00), 763 So.2d 111, *writ denied*, 00-2172 (La. 10/13/00), 771 So.2d 650).

IV.

**LAW AND DISCUSSION**

*Credit/Offset for Disability Benefits*

The Parish asserts that it is entitled to a credit/offset for the disability/retirement benefits paid to Mr. Sandifer by PERS. Under La.R.S. 23:1225(C)(1)(c):

> C. (1) If an employee receives remuneration from:
>
> ….
>
> (c) Benefits under disability benefit plans in the proportion funded by an employer.
>
> ….

6

then compensation benefits under this Chapter shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the workers' compensation benefit, so that the aggregate remuneration from Subparagraphs (a) through (d) of this Paragraph shall not exceed sixty-six and two-thirds percent of his average weekly wage.

The Parish contends that it is entitled to an offset of 48.85 percent because an offset is statutorily provided in the amount of disability benefits paid to Mr. Sandifer. The Parish claims that the PERS plan does provide disability benefits and Mr. Sandifer is receiving benefits classified as disability benefits.

Further, the Parish asserts that the law does not require the numbers to be specifically broken down showing their contribution to obtain an offset. The Parish cites *Matthews v. City of Alexandria*, 92-1784 (La.1993), 619 So.2d 57, *rehearing denied*, 6/22/93, (La.1993), asserting that the extent to which the employer must track its funds to obtain a credit is contrary to the wording of the statute and contrary to the Louisiana Supreme Court's interpretation of the law. We disagree.

*Matthews* is distinguishable from this case because in *Matthews* there was only one entity, the City of Alexandria, contributing to the plan for the Alexandria Fireman's Pension and Relief Fund. *Id.* at 800. The employees paid a set amount, "contribut[ing] 8% of their monthly salaries and the City matches that contribution[.]" *Id.* at 58. The Louisiana Supreme Court affirmed this court's determination that the employer was "entitled to a credit against worker's [sic] compensation benefits due the plaintiffs in the proportion funded by the City, and the City bore its burden of proving that the proportion funded by the City was 74.52%." *Id.* at 61. Further, the plan was a non-vested and non-tenured plan. *Id.* at 60.

7

Because only one entity participated and the evidence showed specific percentages of amounts paid over certain periods of time to an individual employee, a degree of certainty attributable to each employee and to the City is determinable. Here, however, sixty-two parishes participate in the PERS plan and the Parish could not provide an exact figure because there are other sources of revenue such as ad valorem taxes and revenue sharing from other entities. Additionally, the employer contribution is based on the percentage of payroll employees, not per employee.

The Parish has requested remand in this case to be able to prove the math, arguing that Mr. Sandifer is getting overpaid. Mr. Sandifer argues that if the Parish did not establish its burden of proof at trial then the Parish cannot take a credit. Mr. Sandifer argues that the Parish would only be entitled to an offset/credit for disability benefits paid to the claimant in the proportion to the amount funded by the employer. Further, Mr. Sandifer asserts that the Parish cannot show what portion the employer funds to him individually, even if the court finds Mr. Sandifer is receiving disability benefits and not retirement. Mr. Sandifer contends he is receiving retirement benefits and not disability benefits. He asserts the Parish failed to meet its burden of proof or demonstrate what amount of reduction they were potentially entitled to under the statute.

This court has repeatedly enumerated the burden of proof for an entitlement to a credit or offset. "In invoking the reduction in workers' compensation benefits under Section 1225, the employer assumes the burden of proving both the entitlement to and the amount of the credit." *Crochet v. Calcasieu Parish Police Jury*, 16-954, p. 4 (La.App. 3 Cir. 4/12/17), 217 So.3d 464, 467, *writ denied*, 17-781 (La. 9/22/17), __ So.3d __ (citing *Vallery v. State*

*Through Dep't of Health & Hospitals*, 605 So.2d 1380 (La.App. 3 Cir.), *writ denied*, 609 So.2d 225 (La.1992)); *see also Nugent v. Dep't of Health & Human Res's.*, 617 So.2d 1347, 1349 (La.App. 3 Cir. 1993), (noting that "this court clearly explained the statute places the burden of proof on the employer to establish the proportion funded by it for the disability feature of early retirement benefits").

In *City of Natchitoches v. Williams*, 94-1411, pp. 1-2 (La.App. 3 Cir. 5/24/95), 657 So.2d 320, 321-22, this court reviewed the Municipal Employees Retirement System (MERS) in determining whether the City was entitled to an offset for the disability retirement benefits received by their injured employee. There, the employee was receiving benefits which are categorized as strictly disability retirement benefits. *Id.* at 324. We opined that the employee "necessarily precluded himself from receiving a normal retirement and, additionally, subjected himself to the possible consequences . . . which is the City's exercise of its statutory right to seek an offset." *Id.* We also determined that the hearing officer correctly found that the "uncontradicted testimony constituted adequate proof that the City was allowed to offset the entire percentage it contributed." *Id.*

In *Vallery v. State Through Dep't. of Health & Hospitals*, this court explained: "It was incumbent on the State to prove the proportion of its funding for disability benefits, in order to gain the offset." 605 So.2d 1380, 1381. We opined that "[it] would have been relatively easy for the State to have produced expert actuarial testimony to establish the proportion of its funding of Vallery's disability benefit. It simply failed to do so." *Id.* at 1383. Ms. Vallery contributed 7% and the State contributed 8% to the retirement fund. *Id.* Ms. Vallery needed to work ten years to vest into the regular retirement and was four years from the

retirement age of 60. *Id.* Ms. Vallery worked twelve and a half years and had vested into the regular retirement threshold. *Id.* at 1382.

Here, Mr. Sandifer's benefits will convert to retirement benefits because of his years of service and his age. Unlike the testimony in *City of Natchitoches*, here, the Parish provided the testimony of Ms. Tulley which gave a percentage of the Parish's contribution. Ms. Tulley testified to a percentage establishing the Parish contributed to 48.85 percent. However, the Parish failed to establish the amount contributed per employee or the individual contribution made by the employer. The Parish failed to meet its burden of proof for the offset because the Parish could not provide information which was not undisputed or uncontradicted testimony. The testimony provided by Ms. Tulley is disputed and contradicted by the testimony of the PERS actuary, Mr. Curran. The trial court found that Ms. Tulley provided a percentage for the overall employer contribution to PERS but found this to be an estimate and not exact. The trial court clearly relied on Mr. Curran's testimony which noted that the funds are so co-mingled that it is impossible to determine the contribution for an individual employee such as Mr. Sandifer.

The Parish failed to meet the burden of proof for the entitlement and Mr. Curran provided testimony that did contradict Ms. Tulley's estimate. Thus, we find the trial court correctly found that the 48.85 percent was attributable to *all* employees. The Parish had the opportunity at trial to provide the math and establish the exact contribution for Mr. Sandifer but was unable to prove the contribution with specificity as it applies to Mr. Sandifer. The trial court properly found that the Parish failed to meet the burden of proof required to obtain a credit/offset under the statute.

10

Like the plaintiff in *Vallery*, Mr. Sandifer had vested in regular retirement because his years of working for the Parish. At retirement age, Mr. Sandifer's benefits convert to retirement. Thus, Mr. Sandifer is not precluded. Additionally, in *Vallery*, there was only one employer which allowed for an easier, formulaic approach when determining the offset.

Here, the year-to-year records provided by Ms. Tulley were misleading because they did not show the contribution per employee. Mr. Curran testified that the contribution is paid by a percentage of monthly payroll employees and *not* for the individual employee by the employer. The Parish unpersuasively gives greater weight to Ms. Tulley's deposition and testimony and requests this court consider the weight of the testimony. The trial court weighed the testimony provided both by Mr. Curran and Ms. Tulley and afforded Mr. Curran's testimony greater weight.

We will not replace our judgment of the testimony for that of the trial court, which was in the better position to weigh the evidence. We find the Parish failed to meet its burden of proof to establish the amount the Parish contributed on behalf of Mr. Sandifer individually for his retirement benefits to entitle them to an offset/credit. The disputed testimony of Ms. Tulley and Mr. Curran was weighed by the trial court. We find the trial court properly found Ms. Tulley's testimony was not specific enough to establish the amount as it related to Mr. Sandifer's benefits. As noted by Mr. Curran, the calculations are impractical and impossible. Thus, we find the trial court reasonably determined that the Parish is entitled to an offset but failed to meet the burden at trial. Accordingly, we affirm the trial court's judgment and will not remand this case to determine the contribution because the Parish had the opportunity to prove this at trial and failed.

11

*Permanent and Total Disability*

Additionally, we find the trial court properly determined that Mr. Sandifer is permanently and totally disabled. The medical doctors and vocational experts all reached a conclusion that Mr. Sandifer suffered from pain that renders him unable to work and requires pain medicine. Further, as the record reflects, Mr. Sandifer has been out of work for eleven years and is partially and functionally illiterate with little diversity in his work history. The trial court properly found Mr. Sandifer was permanently and totally disabled and that the employer-defendant failed to present evidence at trial which reasonably controverted this status. A review of the record reflects that Mr. Sandifer is permanently and totally disabled. We affirm the trial court's judgment that Mr. Sandifer is permanently and totally disabled.

Next, we must address whether the trial court correctly awarded Mr. Sandifer attorney fees. The Parish asserts that attorney fees were not warranted because the benefits were not reduced and no offset was taken. It is not disputed that workers' compensation benefits have been paid to Mr. Sandifer. Mr. Sandifer does not dispute that the Parish did not take the offset. However, the issue is whether the Parish reasonably controverted Mr. Sandifer's permanent and total disability status. The Parish did not.

"The determination of whether an employer has reasonably controverted claims for the purpose of imposing penalties and attorney fees depends on the facts known to the employer at the time of its conduct." *Romero*, 787 So.2d at 1155 (citing *Harris v. Langston Co.*, 94-1266 (La.App. 3 Cir. 4/5/95), 653 So.2d 789, *writ denied*, 95-1178 (La. 6/23/95), 656 So.2d 1020).

La.R.S. 23:1201(F) reads:

Except as otherwise provided in this Chapter, failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physician when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim….

La.R.S. 23:1201(I) reads:

Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims. The provisions set forth in R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section....

This court further wrote "[to] reasonably controvert a claim so as to not be liable for statutory penalties, the employer must have factual and medical information of such a nature that it reasonably counters that provided by the workers' compensation claimant." *Id.* (citing *Balsamo v. Jones*, 28-885 (La.App. 2 Cir. 12/11/96), 685 So.2d 1140).

In *Doucet v. Jantzen*, 00-1318, p. 1 (La.App. 3 Cir. 4/4/01), 804 So.2d 650, 651, this court found that the plaintiff was permanently and totally disabled after she underwent two failed fusion surgeries following a work-related injury. This court affirmed the workers' compensation judge's determination that the plaintiff was permanently and totally disabled and was entitled to attorney fees. *Id.* at 654. There, the trial court was unable to determine the amount that the employer paid to the plaintiff or the offset that the employer may have taken. *Id.*

In *Chavis v. Dillard's, Inc.*, 11-827, p. 4 (La.App. 3 Cir. 12/21/11), 80 So.3d 1194, 1196, we awarded attorney fees to Ms. Chavis who sustained a work-related injury and her employer, Dillard's, refused to change her status to permanently and totally disabled. Ms. Chavis was awarded attorney fees but not penalties after the workers' compensation judge reviewed the medical evidence and physician testimony which found Ms. Chavis had weakness, shaking, and issues with her balance years after she received a two-level fusion. *Id*. at 1195-96. Further, the court found Ms. Chavis was functionally illiterate and "lacks transferrable skills." *Id*. at 1196. At trial, Dillard's did not provide any medical evidence which would have reasonably controverted the medical testimony supporting Ms. Chavis's permanently and totally disabled status. *Id*. at 1197. Dillard's refusal to change her status forced Ms. Chavis to go to trial and "incur unnecessary attorney's fees." *Id*.

Here, the Parish also refused to stipulate to Mr. Sandifer's permanent and total disability status. The Parish did not reasonably controvert Mr. Sandifer's status and, he, like the plaintiff in *Chavis*, was forced to incur unnecessary fees prosecuting the case. Mr. Sandifer went to multiple doctors, including the doctor that the Parish sent him to see for an evaluation. All the physicians opined that he would not be able to return to work. Furthermore, Mr. Sandifer is functionally illiterate and lacks diversity in his work history, as noted by the two vocational experts.

The trial court reviewed Mr. Sandifer's medical record and found Mr. Sandifer's status as permanently and totally disabled. After the trial court established Mr. Sandifer's status and the Parish failed to reasonably controvert the status, the trial court was authorized to award attorney fees. The record is woefully

deficient of anything which disputes the medical evidence provided by Mr. Sandifer for a finding of permanent and total disability status. After a review of the entire record, and particularly the medical records, we find that the trial court properly determined Mr. Sandifer is permanently and totally disabled. Thus, the Parish's failure to reasonably controvert Mr. Sandifer's status triggered attorney fees because Mr. Sandifer incurred the unnecessary expense of a trial.

It is clear from the record and from oral arguments that the Parish thinks attorney fees were only before the trial court on the motion for new trial and before this court on the basis of whether an offset was obtained, or whether there was a gap in payment. This is not the sole triggering aspect for which attorney fees are awarded.

Louisiana Code of Civil Procedure Article 862 reads:

> Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.

The Parish's argument ignores the standard for attorney fees and is based on an improper reading of *Chavis*. Mr. Sandifer's attorney advances the argument for attorney fees as it was awarded in *Chavis* when the employer forced the plaintiff to trial and then provided no evidence to controvert medical testimony provided by the plaintiff. The offset did not occur and the trial court did acknowledge that during the hearing on the Motion for New Trial. The trial court also acknowledged that Mr. Sandifer had to retain an attorney to prosecute the case. We find that the trial court properly awarded attorney fees, finding the Parish did not reasonably controvert Mr. Sandifer's status and Mr. Sandifer had to prosecute the case.

This court must determine whether to award attorney fees on appeal. Mr. Sandifer requests attorney fees for defending this appeal. In *Olivier v. City of Eunice*, 10-1433, p. 10 (La.App. 3 Cir. 6/18/11), 66 So.2d 1244, this court awarded attorney fees on appeal. "Because attorney fees were correctly awarded below, failing to award attorney fees for the additional work required for this appeal would be inconsistent with that judgment." *Id*. at 1251 (citing *Frank v. Kent Guidry Farms*, 01-727, p. 5 (La.App. 3 Cir. 5/8/02), 816 So.2d 969, 973, *writ denied*, 02-1608 (La. 6/27/03), 847 So.2d 1273). Accordingly, we award Mr. Sandifer $5,000 in attorney fees for defending this appeal.

V.

**CONCLUSION**

Based upon the foregoing, we affirm the trial court's judgment in favor of Mr. Sandifer and grant $5,000 in attorney fees for defending the appeal. All costs are assessed to the Defendant-Appellant.

**AFFIRMED.**